The DENVER AND RIO GRANDE
WESTERN RAILROAD COMPANY,
Plaintiff-Appellee,

v.

Marie BLACKETT, et al.,
Defendants-Appellants.

No. 75-1600.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 17, 1976.

Decided July 9, 1976.

Rehearing Denied Aug. 27, 1976.

John S. Walker, Jr., Denver, Colo., for plaintiff-appellee.

Steven Kent Terry, Dallas, Tex. (John Rossi, Aurora, Colo., and Baker & Foreman, Dallas, Tex., on the brief), for defendants-appellants.

Before BARRETT and DOYLE, Circuit Judges, and TEMPLAR, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

Plaintiff-appellee, The Denver and Rio Grande Western Railroad Company, origi-

nally filed suit in the United States District Court for the District of Colorado pursuant to the applicable section of the Railway Labor Act, which is 45 U.S.C. Section 153 First, subsections (p), (q). The action sought the setting aside of an award of an Adjustment Board in favor of the defendants-appellants. The railroad's demand for relief was based on the alleged lack of jurisdiction of the Board. The defendants-appellants, claimants, answered in the district court and sought enforcement of the award. The trial was merely a hearing based upon submission of the briefs together with the pleadings and the affidavits. The trial court favored the railroad, although it entered a judgment or approved a money award in favor of the defendants-appellants in the sum of $475.83 together with an attorney's fee in the amount of $475. This was a drastic reduction in the amount awarded by the Adjustment Board. The effect of the Board's ruling added up to an award of $23,889.99. The trial court gave effect to an offset tendered by the railroad. This was a first before the district court. It represented the amount that H. B. Blackett had earned as a switchman during the time that the contract as a yardmaster was violated.

It is noted that the claimant, H. B. Blackett, died during the pendency of this long-suffering litigation and his heirs were substituted for him. The other defendants-appellants are representatives of the switchmen's union.

The contract between The Denver and Rio Grande Western Railroad Company and the United Transportation Union provides that a switchman may be promoted to yardmaster where they must work a test period of 60 shifts for one year without being disqualified by the railroad. Thereafter, they work interchangeably as switchman and relief yardmaster until they bid in a permanent yardmaster's position. Even after they bid in a permanent yardmaster's position they retain seniority as switchman and may thereafter elect to return to the position of switchman without loss of seniority.

The claimant Blackett moved frequently from switchman to yardmaster and back again. He had a seniority date as a switchman starting under a contract on the first day that he performed service, October 16, 1941. He qualified for and was assigned to the yardmaster's seniority list on October 28, 1947. Subsequently, on October 1, 1950, he resigned the yardmaster position. On July 9, 1952, he bid in and was again assigned the yardmaster's seniority list. He again resigned from that position during the year 1957. On July 26, 1969, he again bid in and was assigned to yardmaster's seniority list and was removed by The Denver and Rio Grande Western Railroad Company on March 27, 1971, allegedly without an investigation, provided in Article 16 of the switchmen's agreement. He claimed yardmaster's pay for each day that a switchman with lesser seniority was used to fill a yardmaster's vacancy. This claim was rejected by the railroad. Particular dates were specified, but claims were made for numerous other days pursuant to 31(f) of the switchmen's agreement. This totalled 522 days pay and a total demand of $23,889.99.

Following rejection of the claim by the railroad, the union entered into an agreement with the carrier for the establishment of a public law board pursuant to 45 U.S.C. 153 First (i) for the purpose of finally adjudicating the merits of the claim. On May 22, 1973, the Public Law Board (being number 862) entered an award in favor of H. B. Blackett. The award read as follows: "Claim sustained. Carrier is ordered to pay claimant in 60 days from the date of this order." Within the time permitted by law, the railroad filed the suit in district court to set aside the award, claiming that Public Law Board 862 lacked jurisdiction to enter the said award. The union, of course, sought to enforce the award.

The disagreement between the claimant plus the union and the railroad was this: in order to qualify for the yardmaster seniority list a specified number of shifts in a particular year had to have been worked at the yardmaster position. On his last tour

of duty Blackett had not had this number. He had had much more than this number on prior occasions and on his behalf it was contended that the prior service counted. The railroad denied this. The Board, however, ruled for Blackett. This pretty much ended the dispute, but nevertheless the railroad came to court.

First, on May 8, 1974, the railroad filed a motion for summary judgment. This was denied and the trial proceeded. The district court ruled against the railroad on the jurisdictional issue, holding that the Board was empowered to adjudicate the employee's claim. It, in addition, ruled that the award was valid. But it did not stop there. It proceeded to reduce the award by the amount H. B. Blackett earned as a switchman during the period that he was denied work as a yardmaster.

The contentions advanced by the defendants-appellants are, first, that the district court erred in deducting from the award of the Public Law Board the amount that Blackett earned as a switchman during the periods of time that he was denied work as senior extra relief yardmaster.

Second, that the court lacked jurisdiction to reduce the award of the Board in the absence of evidence supporting the suit to set aside the award.

Third, that the district court erred in limiting the attorney's fees to the actual award.

The appellants' main contention is, of course, that the award of the Special Board of Adjustment under the statute is final and binding and not susceptible to the treatment that was here given by the district court. Their argument emphasizes the limited power of the court to deal with an award of the Special Board of Adjustment known as a Public Law Board.

45 U.S.C. 153 First (p) provides that the district courts are empowered to set aside or enforce the order of the Division of the Adjustment Board, but a proviso limits the authority of the Board by specifying that such order may not be set aside except for failure of the Division to comply with the requirements of "this chapter" or for failure of the order to conform or confine itself to matters within the Division's jurisdiction or for fraud or corruption by the Division making the order. To paraphrase, then, the only reviewable aspects are lack of jurisdiction, the Board's acting outside the law or the presence of fraud or corruption on the Board.

The Public Law Board consists of a carrier member, an employee member and a neutral member, all employed by the National Mediation Board. The decision can be rendered by "any two members of the Board." The Act further provides "Such awards shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named." The indications to be inferred from the design of the Act are that Congress did not wish awards by Law Boards to be easily set aside by courts. Thus, the Supreme Court has given a board decision the same finality that it has given to a decision of arbitration. *See Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co.,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). *See also Union Pacific v. Price,* 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959); *Brotherhood of Locomotive Engineers v. Louisville & Nashville R. Co.,* 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). The limited jurisdiction of the court is graphically described by the Fifth Circuit in *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228 (5th Cir. 1970). The court in that case said that the range of judicial review in enforcement cases is among the narrowest known to the law and that the findings and order of the Board are conclusive. *See also Brotherhood of Railroad Trainmen v. Denver and Rio Grande Western Railroad Co.,* 370 F.2d 833 (10th Cir. 1966), wherein this court noted that the Board's determination is final absent a jurisdictional defect.

It is not claimed that there was any jurisdictional defect in the case at bar nor is it contended that there was fraud or corruption or that the Board failed to comply

**294**

with the Labor Act. It is important to note that the Act of Congress here applicable, which gives to the district court the described limited authority to review the Board's determination, makes no provision for allowance of an offset. In the absence of such a grant the district court lacked jurisdiction to thus modify the award. If the court could thus modify the award, the review would be anything but limited. It would amount to, in practical effect, a trial *de novo.*

In undertaking to revise the amount of the award the trial court followed cases which had been decided prior to the 1966 amendment to 45 U.S.C. Section 153 First (p). Those cases generally held that the court in reviewing the determination of the Adjustment Board was empowered to apply the general damage formula that one injured by breach of an employment contract is limited to the amount he would have earned under the contract less such sums as he earned. Using that formula the court deducted from the amount the claimant would have earned as a yardmaster, the amount that he actually earned as a switchman. So this is how it came to the $475.83 award rather than the amount of $23,-899.99, that which was payable for 522 days as a yardmaster. The trial court conceded that the cases that it followed all predated the modification of the statute which strictly limited the court's power to review the award. On this the trial court said in referring to the decisions that it was following:

> It should be noted, however, that *Raabe, Mitchell, Cook* and *Brotherhood of Railroad Trainmen* were all decided prior to the 1966 Amendments to the Railway Labor Act when the damage aspect of the awards was not binding. Even though they may no longer be controlling authority of the issue, they nevertheless remain highly persuasive. Consequently, this Court finds that the defendants are entitled to recover the difference between what Blackett should have earned and what he actually earned which is $475.83.

*Brotherhood of Railroad Trainmen v. Denver & R. G. W. R. Co.,* 370 F.2d 833 (10th Cir. 1966), involved the question whether the court had the authority to determine the measure of damage. This court pointed out that prior to the 1966 amendment, Section 3 First (p) of the Railway Labor Act allowed in suits for enforcement of adjustment board awards the findings and order of the Division of the Adjustment Board to be prima facie evidence of the facts therein stated. The court pointed out that the 1966 amendment changed all of this when it said "the findings and order of the division of the Adjustment Board shall be conclusive on the parties." We went on to add that the only exception to the award's being conclusive was that the court could set aside the order for failure of the Division to comply with the requirement of the Act, for failure of the order to conform to matters within the scope of the division's jurisdiction or for fraud or corruption by a member of the division. With respect to reviewability of the award of damages, the court said:

> So, too, the Board's determination of the amount of the award is final absent a jurisdictional defect. The measure of damages, like the application of affirmative defenses, offers no jurisdictional question.

370 F.2d at 836.

The measure of damages and the application of affirmative defenses offer no jurisdictional question.

Although the award in the instant case was terse in that it merely stated "claim sustained," it left no room for a modification such as that which occurred here. It was positive in its form and its effect was unmistakable. It awarded the whole of the claim of defendant-appellant H. B. Blackett. It was, therefore, error for the trial court to undertake a modification of this.

■ The remaining question is whether the district court erred in reducing to $475 the amount of the attorney's fee awarded. Notwithstanding the number of hours shown to have been devoted to the cause, the trial court fixed the attorney's fees in the amount of $475 so as to coincide with the $475.83 award. In view, however, of

the present turn of events, namely our holding that the trial court was in error in mitigating the damages, the award of attorney's fees must be reconsidered. Section (p) of Section 153 First provides: "If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as part of the costs of the suit." Inasmuch as the court was governed entirely by the amount of the award in the fixing of the attorney's fees, this issue is remanded to the court for further consideration.

The judgment of the district court is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with the views expressed herein above.