657 F.2d 596
 108 L.R.R.M. (BNA) 2035, 92 Lab.Cas. P 12,960
 NORFOLK & WESTERN RAILWAY COMPANY, Appellee,
v.
BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES,
Appellant.
NORFOLK AND WESTERN RAILWAY COMPANY, Appellant,
v.
BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, Appellee.
 Nos. 80-1724, 80-1747.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 5, 1981.
Decided Aug. 17, 1981.
 
 William B. Poff, Roanoke, Va. (Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief), for appellant.
 Joseph Guerrieri, Jr., Washington, D. C. (Highsaw, Mahoney & Friedman, Washington, D. C., James P. McElligott, Jr., McGuire, Woods & Battle, Richmond, Va., on brief), for appellee.
 Before BUTZNER, PHILLIPS and MURNAGHAN, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 This appeal arises from an attempt by the Norfolk and Western Railway (N&W) to transfer the duties of a position fully covered under its Master Agreement with the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC), the duly authorized bargaining representative of N&W's clerical and related employees, to a position that was only partially covered by that agreement. An arbitration panel established by the parties found that this action by N&W was taken in violation of the "common law of the shop" incorporated into the agreement between the railroad and its union and remedied the violation with an award of "penalty pay" to the union member on whose behalf BRAC had challenged N&W's action. Upon cross-petitions for review and enforcement under the Railway Labor Act, the district court upheld the arbitration panel's finding of a violation but set aside the award of punitive damages for lack of jurisdiction. The court also refused to award BRAC attorney's fees under 45 U.S.C. § 153, First (p).
 
 
 2
 On the parties' cross-appeals we affirm the district court's enforcement of the panel's substantive decision and its denial of punitive damages but reverse its denial of any award of attorney's fees to BRAC.
 
 
 3
 * Prior to April 20, 1976, N&W operated a freight yard at Gambrinus, Ohio and a freight agency at Canton, Ohio and employed a chief clerk at each location. The Gambrinus Chief Clerk position was "fully covered" by all the provisions of the Master Agreement between N&W and BRAC. Therefore, the position could only be filled by the most senior qualified BRAC member employed by N&W who exercised his or her right to bid for the position. The Canton Chief Clerk position, on the other hand, had, under the terms of a Supplemental Agreement, been excepted from the coverage of most of the rules of the Master Agreement. Thus, the Canton Chief Clerk position could be filled by a person of N&W's choosing without bidding for the position on the basis of seniority.
 
 
 4
 On April 20, 1976, the separate facilities at Gambrinus and Canton were consolidated, and all employees at Canton were ordered to report to Gambrinus. The fully covered Gambrinus Chief Clerk position, however, was abolished effective April 23, 1976, and the work of that position was assigned to the partially covered Canton Chief Clerk. The latter position, in turn, was immediately transferred to the Gambrinus yard by virtue of the consolidation of the Gambrinus and Canton facilities. The occupant of the Canton Chief Clerk position elected not to transfer to Gambrinus, but rather exercised his seniority to bid into another job. Without posting a bulletin or advertising the position for seniority bidding, N&W appointed the former holder of the now defunct Gambrinus Chief Clerk's position to the recently transferred Canton Chief Clerk's job.
 
 
 5
 BRAC challenged this action by N&W on behalf of Ms. G. H. Mercier, one of its members who was a clerk at the Gambrinus yard. Although the employee appointed by N&W admittedly would have obtained the Canton Chief Clerk's position even had he been required to bid for it, and even though Ms. Mercier remained fully employed, BRAC contended that Ms. Mercier and the other clerks at the Gambrinus yard had been injured by N&W's maneuver because they would not be entitled to bid for the Chief Clerk's position in the future.
 
 
 6
 The dispute was submitted for resolution to the Public Law Board No. 1790 (the Board), an arbitration panel established by agreement of N&W and BRAC.[1] A majority of the Board composed of the BRAC representative and the neutral member held, in Award No. 85, that the work content of the abolished Gambrinus Chief Clerk's position could not be transferred to the partially covered position of Chief Clerk of the consolidated operations at Gambrinus without negotiations between BRAC and N&W. Because there was "no contract language explicitly permitting or prohibiting the carrier from doing so," the Board relied on a recent NRAB decision in finding that N&W's unilateral assignment of the duties of a fully covered position to a partially covered position violated the Scope Rule of the Master Agreement between BRAC and N&W, which provides that "(p)ositions within the scope of this agreement belong to the employee covered thereby and nothing in this Agreement shall be construed to permit the removal of positions from the application of these rules."
 
 
 7
 Turning to the question of an appropriate remedy, the Board recognized that Ms. Mercier "actually suffered no loss or (sic) earnings" as the result of the transfer of work to a partially covered position and observed that "(p) unitive damages are not ordinarily approved." On the other hand, remarked the Board, in the absence of authority to order N&W to reestablish the covered position, "a sustaining award without an assessment of a penalty" would have been "an exercise in futility." Therefore, the Board awarded Ms. Mercier penalty pay at the rate of the covered Chief Clerk's position for 100 eight-hour days.
 
 
 8
 The N&W member of the Board dissented, and he subsequently requested an interpretation of Award No. 85. Specifically, the N&W member wished to know which express rule or provision of the Master Agreement the majority found N&W to have violated since both the fully covered Gambrinus Chief Clerk's position and the partially covered Canton Chief Clerk's position were within the coverage of the Scope Rule. In Interpretation No. 1 of Award No. 85, the majority of the Board responded that it had not based its decision on a violation of any express provision of the agreement. Rather, said the majority, its decision was based on the application of the well-established principle that a carrier may not unilaterally transfer the duties of a fully covered position to one that is not covered. This principle was adopted in the absence of any provision in the agreement between N&W and BRAC either prohibiting or permitting a unilateral transfer of duties from a fully to a partially covered position.
 
 
 9
 In light of the Board's finding of a violation, N&W, on January 12, 1979, agreed with BRAC to make the Chief Clerk's position at the consolidated operations in Gambrinus a position fully covered by all the provisions of the agreement. N&W then filed a petition to review Award No. 85 in the district court pursuant to Section 3, First (q) and Section 3, Second of the Act, 45 U.S.C. §§ 153, First (q) & 153, Second. BRAC answered and filed a counterclaim petition for enforcement of Award No. 85 pursuant to Section 3, First (p) of the Act, 45 U.S.C. § 143, First (p).
 
 
 10
 All claims were submitted to the court on cross-motions for summary judgment. By memorandum opinion, the district court enforced in part and set aside in part Award No. 85 of the Board. The court found that the Board's conclusion that N&W violated the collective bargaining agreement was within the Board's jurisdiction and enforced that portion of the Award. The court set aside, however, the Board's award of punitive damages, and instead assessed only $1.00 in nominal damages. The court also held that, because "the primary purpose of this suit was to set aside a punitive award," N&W had substantially prevailed and, therefore, denied BRAC an award of attorneys fees to which a prevailing railway employees' representative is entitled in an action to enforce an award of a Public Law Board pursuant to 45 U.S.C. § 153, First (p).
 
 
 11
 In their cross-appeals to this court, the parties have raised three issues. N&W questions whether the Board had jurisdiction to find that N&W violated its Master Agreement with BRAC when it unilaterally assigned the duties of a fully covered position to a position only partially covered by the Agreement. BRAC, on the other hand, challenges the propriety of the district court's decision to set aside the Board's award of "penalty pay." Finally, BRAC contends that it should have been granted attorney's fees as a prevailing petitioner pursuant to 45 U.S.C. § 153, First (p).
 
 II
 
 12
 Looking first to N&W's claim that the district court should have set aside the Board's finding of a violation in this case, it must be noted that the scope of judicial review of a railway labor arbitration panel's award has been described as "among the narrowest known to the law," Diamond v. Terminal Rwy. Alabama State Docks, 421 F.2d 228, 233 (5th Cir. 1970). A district court does have the authority, however, to set aside the award of a Public Law Board if the Board failed to comply with the provisions of the Act, if any members of the Board committed fraud in making the award, or if the award was outside the Board's jurisdiction. 45 U.S.C. § 153, First (q). N&W contends that this award lay outside that jurisdiction, but we disagree.
 
 
 13
 The Railway Labor Act limits the jurisdiction of Public Law Boards to disputes "growing out of grievances or out of the interpretation or application" of the parties' collective bargaining agreement. 45 U.S.C. § 153, First (i). Similarly, the memorandum agreement between N&W and BRAC establishing Board No. 1790 provides that "the Board shall not have jurisdiction of disputes growing out of request (sic) for changes in rates of pay and working conditions and shall not have authority to change existing agreements governing rates of pay, rules and working conditions, and shall not have the right to write new rules."
 
 
 14
 These jurisdictional limitations reflect the basic principle of arbitration that an arbitrator "does not sit to dispense his own brand of industrial justice" and "his award is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The Supreme Court has also said, however, that "(t)he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law the practice of the industry and the shop is equally a part of the collective bargaining agreement although not expressed in it." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).
 
 
 15
 It was clear in this arbitration that the Gambrinus Chief Clerk's position lay within the full coverage of the Agreement and that the Canton Chief Clerk's position lay within the partial coverage of the Agreement under the Master Agreement's Scope Rule. Neither the Scope Rule nor any other provision of the Agreement, however, was expressly directed to the power of N&W to transfer duties from a fully covered position to a partially covered position. Confronted with a conflict not expressly treated in the Agreement, the Board drew on the common law of the railway industry to resolve the dispute. Specifically, the Board relied on the statement of the Third Division of the NRAB in Award No. 11983 that "positions or work once within collective agreements cannot be removed therefrom arbitrarily and the work assigned to persons excepted from the agreement." The district court, in upholding the Board's finding of a violation, also relied upon three arbitration cases in which an employer had been prohibited from transferring work from an employee covered by a collective bargaining agreement to an employee outside the representation of a union. See American Bakeries Co., 46 Lab.Arb. 769 (Hon, Arb.1966); Continental Oil Co., 22 Lab.Arb. 880 (Reynard, Arb.1954); Cooperative Mills, Inc., 20 Lab.Arb. 608 (Leholzky, Arb.1953).
 
 
 16
 N&W contends, however, that both the NRAB award relied on by the Board and the arbitration cases relied on by the court are inapposite because those cases dealt with the transfer of duties to a position totally outside the coverage of a collective bargaining agreement. The railroad points to two awards in which it contends the Third Division of the NRAB found that, when, as here, a railway transfers the duties of a fully covered position to a partially covered position, no violation of the collective bargaining agreement occurs. BRAC v. Chicago, Burlington & Quincy R.R., Award No. 4235 (3rd Div. 1948); BRAC v. Gulf Coast Lines, Award No. 3563 (3rd Div. 1948). To the extent these 1948 awards stand for the proposition stated by N&W, we conclude they have been overruled sub silentio by more recent Third Division award relied on by the Board. More importantly, a close reading of these awards reveals that they were based not on a legal conclusion that the transfer of duties from a fully covered to a partially covered position does not violate a collective bargaining agreement but on a factual determination that the transfer of work from a fully covered position to a partially covered position did not remove that work from the full coverage of the agreement.
 
 
 17
 Thus, the question becomes whether it was proper for the Board to extend a principle established in cases involving the transfer of duties from a fully covered position to a position totally outside the scope of a collective bargaining agreement to a case in which work was transferred from a fully covered position to a position only partially covered by an agreement. This question must be answered in the affirmative because the violation of the agreement arises from the railway's attempt to reduce the coverage of duties and the degree of reduction should therefore not be decisive. Since the Board therefore acted within the scope of its jurisdiction, the district court properly upheld this portion of the Board award.
 
 III
 
 18
 The next question raised is whether the district court was correct in setting aside the Board's award of "penalty pay" to Ms. Mercier. This requires resolution of the sub-issues whether the district court had the statutory authority to modify the relief awarded by the Board and, if so, whether the court properly concluded that the Board was without jurisdiction to award purely punitive pay.
 
 A.
 
 19
 BRAC contends that, having upheld the Board's jurisdiction in finding a violation of the Agreement, the district court had no authority to modify the relief provided by the Board and cites Denver & Rio Grande R. R. v. Blackett, 538 F.2d 291 (10th Cir. 1976), in support of this proposition. Blackett, however, simply does not stand for the proposition asserted, and the case is distinguishable from this one. In that case a Public Law Board awarded a union member compensatory damages for the failure of the railway to place the employee in a higher paying position that he was entitled to fill under the provisions of a collective bargaining agreement. The district court upheld the Board's finding of a violation but set off against the amount of compensatory damages the amount of wages earned by the employee in the lower paying position that he continued to hold with the railway. Id. at 292. The Tenth Circuit, after noting that there was no assertion of a jurisdictional defect, held that the district court had no authority to modify the award because the court's attempt to offset the Board's award of damages amounted, in effect, to a trial de novo. Id. at 294.
 
 
 20
 In the present case, on the other hand, the district court set aside the Board's award of purely punitive damages because the Board lacked jurisdiction to make such an award on the basis that there was no support in either the express provisions of the Agreement or the controlling precedents for giving purely punitive relief. Thus, the district court in the present case, unlike the one in Blackett, did not attempt a review of the Board's award of damages on the merits but rather found the Board wholly lacking in jurisdiction to provide punitive relief.
 
 
 21
 Moreover, the statute providing for judicial review of Board awards specifically states that "the order of the (Board) may be set aside, in whole or in part," for failure of the Board to remain within the scope of its jurisdiction. 45 U.S.C. § 153, First (q) (emphasis added). Therefore, the district court clearly had the statutory authority to modify the relief awarded by the Board for the reason asserted by the district court.
 
 B.
 
 22
 BRAC argues in the alternative, however, that the Board did have jurisdiction to award purely punitive pay because, while no express provision of the Agreement made this form of relief available, there is substantial precedent for the use of that remedy. We have recognized that an arbitration panel is restricted to neither the strict language of a collective bargaining agreement nor the principles employed in the interpretation of private employment contracts, Brotherhood of Railroad Signalmen v. Southern Rwy., 380 F.2d 59, 68 (4th Cir. 1967), in fashioning a remedy in order to vindicate a violated right, Tobacco Workers International Union, Local 317 v. Lorillard Corp., 448 F.2d 949, 955 (4th Cir. 1971). The cases and Board decisions cited by BRAC, however, simply do not go so far as to support the award of purely penalty pay.
 
 
 23
 For example, in Tobacco Workers, we recognized the authority of a labor arbitrator to award compensatory back pay to a union member who had been denied a position in violation of the collective bargaining agreement. Id. The question of the appropriateness of awarding punitive damages did not arise. More significantly, in all the cases decided under the Railway Labor Act that are cited by BRAC, the courts merely upheld the award of compensatory damages in the form of the wages an employee would have earned had he been appointed to a position to which he was entitled under a collective bargaining agreement unmitigated by the earnings he made in the lower paying position that he continued to retain during the period of violation. See, e. g., Denver & Rio Grande R. R. v. Blackett, 538 F.2d at 294; Brotherhood of Railroad Trainmen v. Central of Georgia Rwy., 415 F.2d 403, 415 & 415 n.22 (5th Cir. 1969). Finally, while the dissenting opinion of Labor Member Fletcher to Award No. 22194 that is appended as an exhibit to BRAC's reply brief discusses approximately forty awards in which the NRAB has exercised its broad remedial power to award "penalty pay," both Award No. 22194 and all the Awards discussed in the Labor Member's dissent involved situations in which union members had been deprived of higher paying jobs and were therefore awarded "penalty pay" in the amount of the compensation they would have received in the higher paying positions usually unmitigated by the earnings they in fact received in the lower paying jobs they continued to hold. However, characterized in those awards, we think they are more properly treated as compensatory within classic remedial principles.
 
 
 24
 In the present case, on the other hand, Ms. Mercier would not have been entitled to the position of Chief Clerk of the consolidated operations at Gambrinus even if N&W had complied with the Master Agreement and advertised the opening for bidding on the basis of seniority because the former Gambrinus Chief Clerk, who N&W appointed to the position, would have also obtained the position on the basis of seniority. The only damage suffered as a result of N& W's violation of the Agreement was the injury to the rights of Ms. Mercier and other union members to bid for the position in the future. In consequence, the "penalty pay" awarded by the Board in the present case, was totally punitive in nature rather than punitive only to the extent that an award of compensatory damages went unmitigated.
 
 
 25
 Even in the absence of any precedent directly supporting the award of totally punitive damages, the Board did have authority "to create a common law of the shop" covering this situation if there was no precedent prohibiting such an award. See Keen Mountain Construction Co. v. Chambers, 481 F.Supp. 532, 536 (W.D.Va.1979). In Baltimore Regional Joint Board v. Webster Clothes, Inc., 596 F.2d 95, 98 (4th Cir. 1979), and Westinghouse Electric Corp. v. I. B. E. W., 561 F.2d 521 (4th Cir. 1977), however, we clearly prohibited the award of purely punitive damages to remedy a violation of a collective bargaining agreement. In Webster Clothes, the union, in reliance on Enterprise Wheel, argued that, upon the finding of a violation, an arbitrator should be given virtually unlimited latitude in fashioning a remedy. We found, however, that "(n)othing said in Enterprise Wheel negates the requirement that compensatory damages be based upon cognizable loss causally traceable to breach." Webster Clothes, 596 F.2d at 95. We therefore held that punitive damages could not be awarded in the case before us because "the agreement's essence does not contemplate punitive ... awards." Id.
 
 
 26
 In Westinghouse, the company violated the collective bargaining agreement when it failed to provide sufficient notice to negotiate the scheduling of a vacation shut-down. Although no employee suffered any loss as a result of the company's failure, the arbitrator awarded each employee three additional paid vacation days. We refused, however, to sustain the award and held that, "(i)n the absence of willful or wanton conduct, punitive damages should not be awarded." Westinghouse, 561 F.2d at 523.
 
 
 27
 As BRAC points out, on the other hand, the Supreme Court has recognized that the NRAB is a "specialized agency" that should be given great deference in resolving railway labor disputes because it is "acquainted with established procedures, customs and usages in the railway labor world." Elgin, Joliet & Eastern Rwy. v. Burley, 327 U.S. 661, 664, 66 S.Ct. 721, 722, 90 L.Ed. 928 (1946). Therefore, argues BRAC, our opinions in the general labor setting considered in Webster Clothes and Westinghouse should not be extended to the railway industry. BRAC has been unable, however, to identify any "established procedure, custom or usage" peculiar to the railway industry that requires different treatment of railway labor disputes with respect to the award of punitive damages. Therefore, we conclude that the district court properly refused to enforce the Board's award of punitive damages.
 
 IV
 
 28
 BRAC finally contends that, despite its failure to prevail on the punitive damages issue, it is entitled to attorney's fees under 45 U.S.C. § 153, First (p) because it did succeed on its request to enforce the Board's finding of a violation of the Master Agreement. N&W, on the other hand, contends, and the district court agreed, that enforcement of the Board's finding of a violation was unnecessary because N&W had complied with the substantive portion of the Board's order by agreeing to place the Chief Clerk's position within the full coverage of the Agreement.
 
 
 29
 BRAC relies on Burlington Northern, Inc. v. American Railway Supervisors Ass'n, 527 F.2d 216 (7th Cir. 1975). In that case, as in the present one, the railroad had first filed a petition for review under 45 U.S.C. § 153, First (q), which contains no provision for the recovery of attorneys fees. The union, as BRAC has here, then answered and counterclaimed for enforcement under 45 U.S.C. § 153, First (p), which does provide for the award of attorney's fees to a prevailing petitioner. The Seventh Circuit concluded that it was Congress' intention in enacting the attorney's fees provision that unions not be discouraged from enforcing their rights because the expense of district and appellate court consideration could outweigh the benefits of an award and held that the provision applies "whether the request for court-ordered compliance is made by way of a separate action or by means of a counterclaim to a petition for review." Id. at 222.
 
 
 30
 N&W, however, points us to United Transportation Union v. Patapsco & Back Rivers R. R., 59 F.R.D. 374 (D.Md.), aff'd, 487 F.2d 1399 (4th Cir. 1973) (table). In the latter case, the carrier had complied with a Board award under its bona fide interpretation of that award. The union's petition for enforcement of the award in accordance with its interpretation resulted in a remand to the Board for clarification of the award. Since the carrier had already complied with the award, the district court concluded that the union's petition for enforcement was more in the nature of a petition for review that was "within the spirit of § 153, First (q)" and that the union was therefore not entitled to an award of attorney's fees. Id. at 377.
 
 
 31
 We find N&W's reliance on United Transportation inapposite and its contention on the issue of attorney's fees without merit. The district court in this case was not asked simply to render an interpretation of an ambiguous Board award with which the railroad had, in good faith, attempted to comply. Rather, N&W sought in the present case to obtain the benefit of judicial vindication of its position, which had unquestionably been rejected by the Board in its finding of a violation of the Agreement, but to insulate itself from the possible adverse effects of this effort by reversing the action that was the cause of the dispute in the first place. N&W, no doubt, conceded this battle in the hope that it would win the war by obtaining judicial approval of its right unilaterally to shift duties from a fully to a partially covered position in the future. In seeking the establishment of this principle, however, N&W also subjected itself to the possibility that BRAC would seek judicial enforcement of the Board's rejection of that principle and, if successful, be entitled to reimbursement of the attorney's fees it was required to expend in the effort.
 
 
 32
 We therefore conclude that the facts presented by this case fall far closer to those in Burlington Northern than to those in United Transportation and that the result reached in the former case should also obtain in this case. Accordingly, we reverse the decision of the district court denying BRAC any attorney's fees, award those fees to BRAC for the time expended by its attorneys, both in the court below and on this appeal, in defending the declaration of BRAC's right to a fully covered position, and remand the case to the district court for a determination of the proper amount of those fees.[2]
 
 
 33
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 Section 3, Second of the Railway Labor Act, 45 U.S.C. § 153, Second, provides for a system of compulsory arbitration for the resolution of disputes between employees and carriers growing out of the interpretation and application of collective bargaining agreements. Such disputes must first be submitted under Section 3, First (i) for resolution on the property of the carrier involved. If the dispute remains unadjusted, either party may submit the controversy to the National Railroad Adjustment Board (NRAB) for resolution, or the parties may create a Public Law Board or arbitration panel composed of three members to hear the dispute and render a decision. The powers of a Public Law Board are coextensive with those of the NRAB, 45 U.S.C. § 153, Second, whose jurisdiction is limited to disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions," 45 U.S.C. § 153, First (i)
 Public Law Board No. 1790 was created by a Memorandum Agreement, dated July 22, 1976, between N&W and BRAC. Under this agreement, the Board was given jurisdiction to hear and decide "claims and grievances ... arising out of interpretation or application of agreements governing wages, rules, or working conditions" between N&W and BRAC.
 
 
 [2]
 In determining the amount of fees to be awarded, the district court should require BRAC's attorneys to submit a breakdown of the time they expended in defending the Board's decision that the newly established Chief Clerk's position was a fully covered one and that which they expended on all other aspects of this case. Fees should then be awarded only for the former endeavor by BRAC's attorneys