**CLINCHFIELD COAL CO., Plaintiff,**

v.

**UNITED MINE WORKERS OF AMERICA DISTRICT 28, LOCAL UNION 1098, Defendant.**

**Civ. A. No. 82–0344–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

July 21, 1983.

Paul R. Thomson, Jr., Lebanon, Va., S.W. Zanolli, Ronald E. Meisburg, Washington, D.C., Clinton W. Morse, Roanoke, Va., Hugh P. Cline, Norton, Va., Forrest H. Roles, Charleston, W.Va., Louis Dene, Abingdon, Va., for plaintiff.

Gerald F. Sharp, Castlewood, Va., Peter Mitchell, Washington, D.C., for defendant.

MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff in this cause seeks to vacate an award of Arbitrator Samuel J. Nicholas,

dated November 22, 1982. The issues, facts, and intervenors in this case are identical to the issues, facts, and intervenors in the case of *Clinchfield Coal Company v. District 28, United Mine Workers of America,* 556 F.Supp. 522 (W.D.Va.1983), recently decided by this court. The facts will not be repeated in this case. Generally, this case involves the lay-off of approximately 634 employees by Clinchfield on May 22, 1982. This represents approximately thirty percent of Clinchfield's bargaining work force. The lay-off involved the closing of six of the Company's deep mines. One of the mines, Moss # 2 in Russell County, Virginia, employed approximately two hundred people, all of whom are members of Local Union 1098. This suit involves those persons who were laid off at the time Moss # 2 was shut down. To distinguish the two cases, the court will refer to the former case as the Ables Arbitration Award and to this case as the Nicholas Arbitration Award.

The Union argues that Arbitrator Nicholas specifically discusses and rules upon issues which were ignored by Arbitrator Ables. Although the two opinions reach the same result, Nicholas has avoided some of the obvious errors which are made in the Ables Arbitration Award. Specifically, Nicholas does not put the burden of proof on the defendant employer as was done by Ables; Nicholas develops and discusses the historical features of the contract and specifically discusses the meaning of "licensing out of coal operations;" and, Nicholas does not rule out economic considerations in construing the labor agreement.

Clinchfield has introduced Exhibits F through J which are decisions of other arbitrators in regard to the May 22, 1982 lay-off. These arbitrators considered the same facts as Ables and Nicholas and reach contrary results. The Union has presented to the court new arguments which were not presented at the time the court ruled on the Ables Arbitration Award. The court is of the opinion that it is necessary to render an additional, or supplemental, opinion concerning the new issues raised by the Union.

The coal industry, as a result of the present contract between the United Mine Workers of America and the Bituminous Coal Operators Association, does not have final arbitration authority. Therefore, when a vital issue involving interpretation of the language of the contract arises, the industry might find itself with conflicting arbitrator opinions. In such a case, is it the duty of the court to resolve the split between the arbitration opinions?

The union takes the position that through the 1981 contract, and by the abolishing of the Arbitration Review Board, the parties contracted to be bound by split arbitration decisions and that the court should not intervene to resolve the conflict between the arbitrators' opinions. The Union relies upon *United Steel Workers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), in which the Supreme Court stated: "[t]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for, insofar as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* at 599, 80 S.Ct. at 1362. The Union argues that this court considered this language and found that parties were bound by an arbitration award even though the court reaches a contrary conclusion. *Keen Mountain Construction, Inc. v. Chambers,* 481 F.Supp. 532 (W.D.Va.1979).

In order to bolster their argument, various Union employees who lost in the grievance procedure and appealed to this court, have now dismissed their appeals. They have represented to the court that they accept the Arbitrator's award against them. In other words, the Union is taking a position that both the Company and the Union should be bound by the Arbitrator's opinion. The Union is thus accepting those opinions

which are adverse to its members. Further, the Union has offered documentation that at the beginning of this dispute, when the large number of men were laid off from their jobs, they offered for Clinchfield to have one arbitrator rule upon all grievances. In response to this offer, Clinchfield insisted on separate arbitration of the various grievances. The Union further argues that injunctions entered against its members force them to continue to work when they have a grievance, and to submit the case to arbitration. Therefore, when the arbitrator has ruled, the parties should be bound by the ruling.

The Union contends that in seeking judicial review of the arbitration award, Clinchfield has violated Article XXDII of the contract which states: "[t]he purpose of this provision is to provide for the settlement of all such disputes and claims through the machinery of this contract and by collective bargaining without recourse to the court." The provision further provides that disputes which are national in character are to be submitted to collective bargaining. It appears to the court from the number of employees involved and the number of companies which intervened in this suit, that this action is an appropriate subject for collective bargaining, rather than the arbitration process. In this regard, it appears that there has already been extensive collective bargaining over the particular paragraph at issue in this case.

The court discussed this point in *Clinchfield Coal Company v. District 28, United Mine Workers of America, supra,* and observed that the language that is contained in the 1981 contract in the second paragraph of Article I, Section (a) has been in existence for many years. One must look to the contract to determine whether the previous interpretations of the contract are precedents which should be binding upon the parties. Clinchfield Coal Company has filed with the court numerous opinions which are contrary to the Nicholas decision and the Union has presented no decisions

prior to the 1981 contract in support of its position. Indeed, the Ables and Nicholas opinions apparently stand alone against all those which were decided prior to 1981 and all those that have been decided in connection with the present lay-off.

■ Since the parties have treated this matter as a subject which is proper for arbitration, this court is of the opinion that its review must be under the guidelines set forth in *United Steel Workers v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *United Steel Workers,* the Court stated:

> An arbitrator is confined to interpretation and application of a collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Id.* at 597, 80 S.Ct. at 1361. When the identical factual situation is submitted to two arbitrators for consideration, and the arbitrators reach opposite conclusions, it becomes obvious that one arbitrator's opinion is not in accordance with the essence of the contract. This being so, it is mandatory that it be determined which of the arbitrators' opinions is in accordance with the essence of the contract.

In such a situation, there is no place for the parties to turn, so they must turn to the court assuring that everyone will be treated equally and fairly and not be subject to opposite opinions based upon the whims of the arbitrators. In this case, literally thousands of people are affected by opposite decisions and the companies have no standard by which to determine their own policies and the future of their operations. This situation cries out for an answer which is uniform.

■ In determining whether a particular award is taken from the essence of the contract, the common law of the shop must be taken into consideration. *Steel Workers v. Warrior & Gulf Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In *Steel Workers,* the Court stated:

The labor arbitrator's source of law is not confined to the expressed provisions of the contract, as the industrial source of law is not confined to the expressed provisions of the contract, as the industrial common law—practices of the industries in the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*Id.* at 581, 80 S.Ct. at 1352. In this case, the common law of the shop was presented to Arbitrator Nicholas through the various opinions which had been decided by the Arbitration Review Board and by other arbitrators prior to the 1981 contract.

Arbitrator Nicholas stated in his opinion: The company submits several arbitration cases. The cases are not submitted with the intent that these cases are on point with regard to fact, but these cases merely represent that there is a concensus of opinion by arbitrators that when this particular issue is broached, there must be demonstrated by the Union a causable connection between a particular act of licensing out and a particular act of a particular lay-off and that has to be tied to a certain time frame and there is [sic] specific guidelines. This is not just something that can be point out at the whim of the Union to ask for anything they feel like asking for at this time. It is significant in this particular case as over the past 30 years, the 30-plus years, that Clinchfield has licensed out coal mining operations or coal land that there has been numerous closings, numerous lay-offs of Clinchfield's employees while the contractors continue to work right on and never before has the Union protested it. A language as identical as this language was in the contracts of 1974, 1978 and 1981. (Exhibit D–1, pp. 115, 116).

Most significant is the fact that the common law of the shop prior to 1981 was incorporated into and made a part of the 1981 contract. Even though the Arbitration Review Board had been abolished, as far as its decisions being a precedent, the collective bargaining agreement of 1981 brought the decisions of the Arbitration Review Board into the 1981 agreement. Article XXIV(k) provides that "all decisions entered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential affect under this agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this agreement." There have been no changes in the crucial paragraph which is in dispute, therefore, all cases interpreting this language prior to the 1981 contract are deemed to be precedents in deciding the issues in cases in the 1981 agreement.

■ Arbitrator Nicholas failed to accept that the 1981 agreement incorporated these decisions and that he was bound by these decisions. Although he recognized their existence and recognized their precedential value, he decided that he was not bound by them. For this reason, the court is of the opinion that Arbitrator Nicholas' decision is not in accordance with the essence of the 1981 collective bargaining agreement between BCOA and the UMWA.

The court is of the opinion that there must be proximate cause between a particular licensing out and a particular lay-off. In this case, there is no indication that the licensing out was the cause of the lay-off. The evidence reveals that the lay-off was caused by the economic conditions which came into existence in 1982. Since Arbitrator Nicholas' award ignored the common law interpretations which are now embodied in the 1981 contract, his award does not draw its essence from the collective bargaining agreement. Summary judgment will be granted to the plaintiff.

The Clerk of this court is directed to send certified copies of this Memorandum Opinion to counsel of record.