WESTINGHOUSE ELECTRIC CORPORATION, AEROSPACE
DIVISION, Appellee,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO and CLC, Local Union No. 1805, Appellants.

No. 76–2268.

United States Court of Appeals, Fourth Circuit.

Heard April 4, 1977.

Decided Aug. 23, 1977.

---

Bernard W. Rubenstein, Baltimore, Md. (Edelman, Levy & Rubenstein, Baltimore, Md., on brief), for appellants.

Leonard E. Cohen, Baltimore, Md. (Jeffrey E. Rockman, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellee.

Before WINTER, BUTZNER and HALL, Circuit Judges.

BUTZNER, Circuit Judge:

The International Brotherhood of Electrical Workers (I.B.E.W.) appeals an order of the district court vacating an arbitrator's award against Westinghouse Electric Corporation. We affirm because the arbitrator's allowance of damages was improper.

The collective bargaining agreement permits Westinghouse to shut down for vacations, leaving the time of the shutdown to negotiations. The company is required to designate this time before January 1 of the year in which the shutdown is to occur.[1]

On November 25, 1974, Westinghouse formally notified the union that it was planning a vacation shutdown for Christmas week of 1975. This decision was based on sound business reasons, and at no time has the union questioned the company's motives for choosing that week.[2] After a slight delay attributable to the fault of neither party, a negotiating session was held on December 16, 1974. At that time, the union representative raised several questions which had been discussed at an earlier union meeting. Since the representative had to report to the full membership for a vote, he asked that a final decision be delayed until after the next union meeting, scheduled for January. However, because the collective bargaining agreement required that the shutdown be designated before January 1, and because other unions at the plant had already agreed to the Christmas week shutdown, Westinghouse advised the I.B.E.W. on December 20, 1974, that the vacation shutdown would take place during Christmas week, 1975.

Dissatisfied with the company's unilateral action, the union filed a grievance, and when the dispute remained unsettled, requested that it be submitted to arbitration. After a hearing, the arbitrator found that the company had violated the collective bargaining agreement by failing to provide sufficient time for negotiations in advance of the January 1 deadline, and he awarded each employee three additional paid vacation days.

Westinghouse then filed this action to set aside the arbitrator's award. On cross-motions for summary judgment, the district court granted the company's request. It found that the arbitrator ignored the language of the bargaining agreement by viewing the shutdown itself, instead of just the time of the shutdown, as a matter for negotiation. It also found that the arbitrator exceeded the scope of the issues submitted to him for arbitration. Nevertheless, the court accepted his finding that the 37 days between the date of the company's notice and the January 1 deadline was too short a period to allow for negotiations. Finally, the court concluded that since the union had failed to prove any monetary

---

1. Article XIV, section 1 of the agreement provides in part:

    The Company will schedule vacation shutdowns for vacation purposes, and the time of year of the vacation shutdowns will be a matter for negotiations. The vacations will run concurrently with the vacation shutdown periods . . . . .

    The Company shall be required to designate the time of the vacation shutdown or shutdowns before January 1 of the vacation year after such time has been made a matter for negotiations as above provided.

2. The company proposed to schedule the vacation shutdown during Christmas week because the natural gas supply would be curtailed in winter; in the past, many employees had taken Christmas week off even when a shutdown was not scheduled; and the employees would use only three of their vacation days since the week already had two holidays.

loss, the award of damages was impermissibly punitive.

■ We find no error in the district court's acceptance of the arbitrator's finding that the company allowed insufficient time for negotiations. Notwithstanding this violation, we agree with the district court that the arbitrator's award of damages cannot be sustained.

In International Paper Co., Container Div., 76–1 ARB ¶ 8214 (1976), the arbitrator found that the company had violated a collective bargaining agreement by scheduling a vacation shutdown. Nonetheless, with respect to the appropriate remedy for the violation, he stated:

> The Union has asked that the remedy for the breach be an award of additional vacation time with pay. I see no justification for such a remedy. Though the vacation shutdown interfered with certain valuable employee rights, no employee lost any vacation time because of the shutdown. Such an award would be punitive in nature, and there is nothing in the record to justify a punitive sanction. The Company acted in good faith, with advance notice and made a sincere effort to reach an understanding of its rights under the Agreement . . . .. I can find no basis for calculating any monetary damages in this case or for devising an effective affirmative remedy.

Similarly, in another vacation shutdown case, Philip Carey Mfg. Co., 37 LA 134, 136 (1961), the arbitrator said:

> [T]here is no established concept of which I am aware to the effect that contract violations involving no monetary loss to employees are to be remedied by payments based on inconvenience or designed as punitive damages. On the contrary, there are innumerable cases in which arbitrators have found violations of contract provisions without awarding any monetary compensation, when no monetary losses are shown.

■ As the district judge noted, these arbitration decisions embody principles that may be viewed as a part of the "industrial common law" which is incorporated into the collective bargaining agreement. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). With respect to vacation shutdowns, compensatory damages may be awarded only when a breach of the bargaining agreement causes a monetary loss. In the absence of willful or wanton conduct, punitive damages should not be awarded. *See also* F. Elkouri and E. Elkouri, How Arbitration Works 356–57 (3d ed. 1973); O. Fairweather, Practice and Procedure in Labor Arbitration 303–09 (1973).

In this case, the union makes no claim that the company's conduct was willful or wanton, and the arbitrator characterized his award as "non-punitive." With respect to the employees who took their vacation during the shutdown, the arbitrator ruled:

> Employees who have reserved three days of vacation for this particular period should be granted three additional days of paid vacation in 1976.

It is clear, however, that none of these employees suffered any monetary loss. Each received the exact number of paid vacation days to which he was entitled without losing any days of work.

The entitlement to damages of the workers who chose to take their vacations before Christmas week presents a closer issue. As to them, the arbitrator ruled:

> Employees who have not been deprived of vacation time because they have already taken their full vacations should not be compelled to take a three-day layoff without pay. They should therefore be paid for the three days.

At first blush this award seems plausible. However, examination of the arbitration record discloses that there is no evidence to support a finding of any compensable damage to these employees. The arbitrator ruled that the only breach of the agreement was the company's failure to afford sufficient time for negotiations. The union did not introduce proof that this violation influenced any employee's scheduling of his vacation. Thus, no causal relationship be-

tween the company's violation of the agreement and the loss claimed by these employees has been shown.

The employees had about 12 months notice that the vacation shutdown was scheduled for Christmas week, 1975. Instead of insisting that all vacations coincide with the shutdown, the company accommodated its employees who desired to schedule their vacations at other times. No employee testified that he suffered any monetary loss, inconvenience or hardship. Moreover, the evidence fails to show, and it is unreasonable to assume, that even if the company had allowed sufficient time for negotiations, a shutdown could have been scheduled that would have suited the convenience of every employee.

Though nominally compensatory, the award was actually punitive. Because no provision of the contract warranted this punishment, the arbitrator exceeded his jurisdiction. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). We therefore affirm the judgment of the district court.