BALTIMORE REGIONAL JOINT BOARD, Amalgamated Clothing Workers of America, Appellant,

v.

WEBSTER CLOTHES, INC., Appellee.

No. 78–1216.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1979.

Decided April 6, 1979.

Bernard W. Rubenstein, Baltimore, Md., for appellant.

Jeffrey E. Rockman, Alan I. Baron, Baltimore, Md., for appellee.

Before HALL, Circuit Judge, JACK R. MILLER, Judge, United States Court of Customs and Patent Appeals, sitting by designation, and PHILLIPS, Circuit Judge.

PER CURIAM:

Amalgamated Clothing Workers of America (hereinafter Union) appeals from an order of the District Court for the District of Maryland granting motion by the plaintiff, Webster Clothes, Inc. (hereinafter Webster) for summary judgment vacating an arbitrator's award in favor of the Union for the benefit of Webster's employees. We affirm.

Webster brought this action against the Union to have vacated an arbitrator's decision granting an award of damages to the Union for Webster's breach of a collective bargaining agreement. The facts leading up to the arbitration were as follows. At the times in issue Webster operated several men's clothing stores, and until the latter part of 1974, manufactured suits for its retail business in its own factory in Westminster, Maryland. This manufacturing operation was covered by various successive collective bargaining agreements between Webster and the Union. Article XVII of the agreement that was in effect at the critical time in this litigation contained a provision requiring union consent to any agreement Webster might make with a sup-

plier for the manufacture of clothes for Webster's retail stores.[1]

On September 9, 1974 Webster advised the Union that it would close down its manufacturing operation at the Westminster plant at the close of fall production. At about the same time, the Union learned that Webster had contracted, without Union consent, for the production by and purchase of suits from the Gary Allen Co. On learning of the planned shutdown of operations the Union struck Webster's factory and warehouse. An emergency arbitration meeting was held on September 15, 1974, at which time the arbitrator granted Webster's request for an interim order enjoining the strike. Some time around the end of October 1974 Webster, at the close of fall production, permanently shut down its plant. Thereafter several hearings were held before the arbitrator and on February 4, 1975, the challenged decision was rendered. The arbitrator found that Webster had breached Article XVII of the bargaining agreement by contracting, without Union consent, with other companies, particularly Gary Allen, for the manufacture of clothing. Noting the decline in Webster's purchase of cloth and union labels in 1974 and the fact that the Union was "sewn out" by late October or early November 1974, the arbitrator found that, as a result of Webster's unauthorized activity, the Union had suffered a payroll loss of approximately $80,000 in 1974. The arbitrator noted that "while it may well have been true . . . that goods manufactured in the plant would have been too late for the Fall season, the fact remains that the Agreement required the Company to obtain Union consent to such outside manufacturing operations." Thereupon the arbitrator ordered that Webster pay the Union $80,000 for distribution among Webster's former employees.[2]

Webster then brought this action to have the award vacated on grounds that the arbitrator exceeded his authority under the agreement by issuing an award both contrary to the facts presented at the arbitration hearings and not contemplated by the terms of that agreement. Following a hearing on the parties' cross-motions for summary judgment, the district judge ordered the arbitrator to submit a detailed explanation regarding his computation of the award of $80,000, for consideration in ruling on the motion. The arbitrator's explanation stated that the $80,000 figure was based on his conclusion from the facts presented that the November and December 1974 payrolls were lost by virtue of Webster's breach, and that, as compared with average payrolls for the years 1968–1973, this loss amounted to a sum of $80,-000. Following a renewed hearing on the parties' cross-motions for summary judgment, the district court entered summary judgment vacating the arbitrator's award and this appeal followed.

■ In granting summary judgment, the district court accepted as undisputed facts that the Westminster plant was operating at full capacity with some overtime at the time garments were purchased from Gary Allen, and that these garments would not have been made at Westminster even if not

1. Article XVII of the collective bargaining agreement provided:

OTHER FACTORIES AND CONTRACTORS

A. During the term of this Agreement the Employer agrees that he shall not, without the consent of the Union, remove or cause to be removed his present plant or plants from the city or cities in which such plant or plants are located.

B. During the term of this Agreement the Employer may with the consent of the Union manufacture clothing or cause them to be manufactured for his own business use in a factory other than his present factory or factories provided his factory or factories have and continue to have full employment and provided further that such other factory or factories are under contract with the Union.

C. The Employer further agrees that he shall send work only to such Union contractors designated by agreement of the parties herein. The Employer employing contractors agrees simultaneously with the execution of this Agreement to execute a contractor registration statement, the terms and conditions of which shall be specifically incorporated herein by reference.

2. The arbitrator's decision denied the Union's prayer for an order requiring Webster to resume production at the Westminster plant.

made by Gary Allen because they were fall garments which had to be in the stores by October 15. On this basis the Court concluded that as a matter of law there had been no showing of actual damages resulting from Webster's breach of the agreement, and that the arbitrator, in making a demonstrably punitive award, had gone beyond the terms of the agreement.[3] We agree with this analysis.

In *Westinghouse Electric Corp., Aerospace Division v. IBEW, Local 1805*, 561 F.2d 521 (4th Cir. 1977), this Court held unenforceable an arbitrator's award to union members of extra paid vacation days for the employer's breach of a union contract provision requiring negotiations regarding vacation shutdowns. The union in that case had failed to show either monetary loss resulting from the breach or willful or wanton conduct in its perpetration. We stated that "[w]ith respect to vacation shutdowns, compensatory damages may be awarded only when a breach of the bargaining agreement causes a monetary loss . . . ." *Id.* at 523. Webster relies on *Westinghouse* to support the district court's judgment here. The Union contends that the *Westinghouse* holding is limited to awards concerning vacation shutdowns, and that, in any case, it should not be applied to a breach of a provision so essential to the agreement as that here involved. The Union further contends that, although there may be some uncertainty as to the nature and the amount of the loss suffered as a result of Webster's breach, given the latitude afforded arbitrators in fashioning remedies in *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the arbitrator here, having found a breach, had the authority to, and did, fashion an appropriate remedy to compensate Webster employees.

■ We do not read *Westinghouse* to be so narrowly based, nor *Enterprise Wheel* to authorize the award here made. It is clear that in order to be entitled to compensatory damages for contract breach, a party must have suffered some legally cognizable loss, be it manifestly monetary or measurable in monetary terms. This is *Westinghouse*'s burden, and it is not confined to essential as opposed to peripheral terms of contracts. There was simply no rationally probative evidence on the record before the arbitrator that Webster's breach caused in fact a loss to its employees of any sort traditionally justifying an award of compensatory damages.

■ Nothing said in *Enterprise Wheel* negates the requirement that compensatory damages be based upon cognizable loss causally traceable to breach. The Court in that case said: "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement . . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement . . . ." *Id.* at 597, 80 S.Ct. at 1361. The award of damages in the present case does not draw its essence from the bargaining agreement, for the agreement's essence does not contemplate punitive, but only compensatory awards. Though not termed punitive, the award here given can only be such, for there is nothing in the record showing it validly compensatory, and it is manifestly not nominal. In the absence of any provision for punitive awards, and of any substantiating proof of willful or wanton conduct, an arbitrator may not make an award of punitive damages for breach of a collective bargaining agreement. *Westinghouse Electric Corp., Aerospace Division v. IBEW, Local 1805*, 561 F.2d 521 (4th Cir. 1977). *See also Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co.*, 298 F.2d 277 (3d Cir. 1962). There being no provision in the agreement here for an award of punitive damages, the arbitrator's award is not sustainable. The judgment vacating it is therefore affirmed.

*AFFIRMED.*

---

3. It is true that the "undisputed" facts underlying this conclusion came solely from testimony by Webster and that the arbitrator could have rejected its credibility, but given two opportunities to say as much, and to justify the award as compensatory rather than punitive, he did not do so. In fact, the arbitrator's opinion indicates that he did not entertain serious doubts concerning the credibility of the testimony. Accepting it, he held the award still justifiable on the basis alone of the technical breach.