**GEORGIA POWER COMPANY**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 84.**

Civ. No. 1:91–cv–15–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

June 4, 1992.

Michael C. Murphy, Jesse P. Schaudies, Jr., Christopher Sheridan Miller, Troutman Sanders, Atlanta, GA, for plaintiff.

James Michael Walls, Walls & Corlew, Atlanta, GA, for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This action for vacation of an arbitration award is before the court on Plaintiff's motion for an extension of time within which motions for summary judgment may be filed, Plaintiff's motion for an extension of time within which responses to motions for summary judgment may be filed, and the parties' cross motions for summary judgment.

As an initial matter, Plaintiff's two motions for extensions of time are DISMISSED AS MOOT. Defendant did not oppose either motion and each party has now filed a motion for summary judgment and a response to the adverse party's motion for summary judgment.

The basic facts giving rise to this action are undisputed and the parties agree that this case is ripe for disposition on summary judgment. Effective July 1, 1987, Plaintiff Georgia Power Company ("Georgia Power" or "Company") and Defendant International Brotherhood of Electrical Workers, Local 84 ("Union") executed a collective bargaining agreement entitled "Memorandum of Agreement between Georgia Power Company and Local Union No. 84 of the International Brotherhood of Electrical Workers" ("Collective Bargaining Agreement" or "Agreement"). This Agreement was in force during all times material to this action. Paragraph 65 of the Agreement provides for arbitration of certain disputes between the Company and the Union. Complaint, Exh. A, ¶ 65.[1]

During the first six months of 1988, the Company and the Union conducted negotiations regarding the Company's proposed implementation of a Pilot Incentive Pay Program ("Program"). Following an impasse in negotiations, the Company unilaterally implemented this Program for employees at its Plant Bowen and in its Macon Division.[2] In

---

1. Neither party contends that the dispute at issue in this case was improperly submitted to arbitration.

2. Under the Pilot Incentive Pay Program, the Company paid employees at Plant Bowen and in the Macon Division fifty percent of the savings they generated. The savings generated were measured according to a formula developed by the Company.

August of 1988, the Union filed a grievance regarding the Company's implementation of the Program. The Company denied this grievance, and pursuant to Paragraph 65 of the Agreement, the parties submitted their dispute to arbitration. The Arbitration Board was composed of Howard Winkler, the Company arbitrator, Doyle Howard, the Union Arbitrator, and Ferrin Y. Mathews, a neutral arbitrator selected by agreement of the parties.

The Arbitration Board held an evidentiary hearing regarding the parties' dispute on September 15, 1989. On February 7, 1990, Arbitrator Mathews issued a Tentative Opinion and Award, which at that time was neither a final decision of the Arbitration Board nor a binding order. In the Tentative Opinion and Award, Arbitrator Mathews found that the Company's implementation of the Pilot Incentive Pay Program violated the Collective Bargaining Agreement. Stipulated Exh. G (Opinion of February 7, 1990), p. 60. Arbitrator Mathews first determined that the cash awards the Company had paid out under the Program constituted "wages" and "rates of pay," which are mandatory subjects of bargaining under the Agreement. *Id.* at 42. He further found that these cash awards altered the wage schedules which had been negotiated by the Company and the Union. *Id.* at 44, 49. Arbitrator Mathews thus concluded that the Company had violated the Agreement by altering the negotiated wage schedules without the consent of the Union. *Id.* at 49.[3]

Arbitrator Mathews, however, rejected the Union's request that he award "the same percentage of wages, as that which was paid to the employees at Plant Bowen, to all of the Company's employee's system wide." *Id.* at 57. Arbitrator Mathews concluded that no basis existed to support an award of monetary damages:

> As also contended by the Company, no employee of the Bargaining Unit has suffered a monetary loss. For the year 1988, the Company paid to the participating em-

ployees the amount due them under the program. The remaining members of the Bargaining Unit did not participate in the Pilot Incentive Pay Program, and hence were promised nothing by the Company. Since it has been found that the action of the Company in implementing the program was wrongful, the employees, at locations other than Plant Bowen and the Macon Division, would have no legal basis to compel any payment from the Company.

*Id.* at 58–59. Arbitrator Mathews noted that the issuance of an award to employees who did not participate in the Program would be "in the nature of a penalty, and does not 'make whole' employees for a monetary loss suffered." *Id.* at 59.

On February 12, 1990, the Arbitration Board held an executive session. At that session, Mr. Winkler, the Company Arbitrator, informed the Board that immediately before receipt of the Tentative Opinion and Award, Georgia Power had made payments under the Program for the year 1989. Stipulated Exh. L (Reconsideration of and Addendum to Opinion and Award Rendered February 7, 1990), p. 1. Mr. Howard, the Union Arbitrator, argued that these payments were undertaken in bad faith and once again urged Arbitrator Mathews to require the Company to pay monetary damages. Arbitrator Mathews ordered further briefing on the question of whether Union members who did not participate in the Program were entitled to monetary relief. On March 8, 1990, the parties submitted briefs on that issue.

On April 27, 1990, Arbitrator Mathews issued a Reconsideration of and Addendum to Opinion and Award Rendered February 7, 1990 ("Addendum"). In this Addendum, Arbitrator Mathews concluded that the Company should be required to pay monetary damages to Union members who did not participate in the Pilot Incentive Pay Program. He ordered the following remedy:

> The Company is ordered to immediately determine the amount of money paid to the Bargaining Unit employees participating in

---

**3.** Article XIX of the Agreement provides in part, "This Agreement shall be subject to amendment at any time by mutual consent of the parties hereto. Such amendments shall be reduced to writing, state the effective date of the amendment, be executed and approved in the same manner as this Agreement." Complaint, Exh. A, ¶ 70.

the Incentive Pay Program for the years 1988 and 1989 at Plant Bowen and in the Macon Division. That amount, so determined shall constitute the amount of money which the Company shall immediately pay to the Bargaining Unit employees who did not participate in the Incentive Pay Program. The payment to said employees shall be by the same method and on the same basis utilized by the Company in making the payment to the Bargaining Unit employees at Plant Bowen and in the Macon Division.

Stipulated Exh. L, p. 100.

Arbitrator Mathews adhered to his original conclusion that "no employee of the Bargaining Unit, not a part of the Program, has suffered a monetary loss as that employee had not been promised anything by the Company." *Id.* at 18. However, upon reconsideration, he concluded that those employees "may have suffered monetary loss on another basis." *Id.* Arbitrator Mathews reached this conclusion on the basis of Paragraph 69 of the Agreement, entitled "Non–Discrimination," and Paragraph 50 of the Agreement, entitled "Wage Rates." Paragraph 69 provides:

> The Company and the Union ... agree that the provisions of this Agreement shall continue to apply to all employees covered by this Agreement without discrimination and that in carrying out the respective obligations under this Agreement there will be no discrimination against any qualified employee or applicant on account of race, creed, color, sex, age (40 and over), national origin, handicap or status as a veteran.

Complaint, Exh. A, ¶ 69. Paragraph 50 provides in relevant part, "For all employees of the Company covered by this Agreement, wages at the rates shown in Exhibit 'A' ... shall be the base rates paid for 40 hours work per work week." *Id.* at ¶ 50.

Arbitrator Mathews found that the Company had violated Paragraph 69 by altering the wages of selected employees:

> Thus, it becomes apparent that when the Company selected Plant Bowen and the

Macon Division as the sites for the Incentive Pay Program, and selected employees at those locations to participate in the Program, the Company, in effect, changed the wages for selected employees from those shown in "Exhibit 'A'" so that the wages contained in that Exhibit were no longer the wages for "all employees of the Company covered by this Agreement." Thus, the Company did not, as required by [Paragraph 69], continue to apply the provisions of the Agreement [Paragraphs 50 and 51] to all of the employees covered by the Agreement without discrimination. Those members of the Bargaining Unit who were not participants in the Program were discriminated against, as those employees of the Bargaining Unit, participating in the Program, received increases of wages while occupying the same classifications as those members of the Bargaining Unit not participating in the Program. Those employees who suffered discrimination by virtue of the difference in wages are entitled to be compensated because of that discriminatory action on behalf of the Company.

*Id.* at 18–19.

By letter dated May 2, 1990, Mr. Winkler dissented from the Addendum and requested an executive session of the Arbitration Board. On June 18, 1990, the Arbitration Board held a hearing regarding the scope and meaning of Paragraph 69. The Company argued that the provision applies only to discrimination "on account of race, creed, color, sex, age (40 and over), national origin, handicap or status as a veteran." On October 8, 1990, Arbitrator Mathews issued an opinion, in which he declined to modify the remedy he had ordered. Mr. Howard concurred in this opinion, thereby making it a final and binding decision of the Arbitration Board.

On January 4, 1991, Georgia Power filed its complaint in this action, seeking vacation of that portion of the arbitration award which requires it to pay monetary damages to Union employees who did not participate in the Pilot Incentive Pay Program.[4] The Compa-

---

4. The Company states that it would be required

to pay $2,657,164.44 under the final arbitration

ny advances four bases for vacation of the award: (1) the monetary remedy ordered by the Arbitration Board constitutes an unauthorized award of punitive damages; (2) the award conflicts with the Collective Bargaining Agreement because it exceeds the Arbitration Board's authority to award backpay and because the award itself violates the wage schedules set forth in the Agreement; (3) no evidence exists to support the Arbitrator's construction of Paragraph 69 of the Agreement; and (4) the award is irrational. The Union has counterclaimed, seeking enforcement of the arbitration award. ·

■ The court notes initially that its review of the arbitration award at issue "is limited to a determination of whether [the] award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." *Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers Local No. 361*, 726 F.2d 698, 699 (11th Cir.1984). As the Supreme Court stated in *United Paperworkers Int'l Union v. Misco*, "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987) (*quoting United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

Georgia Power's initial contention is that the monetary relief ordered by the Arbitration Board constitutes an unauthorized award of punitive damages. ·This contention consists of two separate arguments: (1) the monetary relief ordered by the Arbitration Board constitutes an award of punitive damages; (2) the Arbitration Board lacked the authority to order the monetary relief contained in the arbitration award. ·

■ A review of the April 27, 1990 Addendum reveals that the damages awarded by the Arbitration Board are punitive in nature. In the Addendum, Arbitrator Mathews found that the Company had discrimi-

award. Affidavit of Don B. Ellis (Georgia Power Company Labor Relations Manager), ¶ 4 (submit-

nated against employees who did not participate in the Pilot Incentive Pay Program by selectively altering the wages of employees at Plant Bowen and in the Macon Division. Specifically, the Company had provided employees at Plant Bowen and in the Macon Division the opportunity to effect savings under the Program and thereby to increase their wages, while not providing a similar opportunity to employees at other locations. Stipulated Exh. L, p. 21. Arbitrator Mathews concluded that the Company's actions violated Paragraph 69 of the Agreement. While the court does not share Arbitrator Mathews' view of Paragraph 69, both the parties and the court are bound by his interpretation of that provision. *United Paperworkers Int'l Union v. Misco*, 484 U.S. at 38, 108 S.Ct. at 371 ("The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.").

No evidence exists, however, to support Arbitrator Mathews' conclusion that employees who did not participate in the Pilot Incentive Pay Program suffered a monetary loss because of the Company's discriminatory selection of employees at Plant Bowen and in the Macon Division. Arbitrator Mathews reasoned as follows:

> The payment which will be ordered to be made to those members of the Bargaining Unit, who did not participate in the Incentive Pay Program, is not a payment to them for any loss which they may have suffered because of a promised payment by the Company, but it is a payment to compensate them for the extent to which they suffered discrimination through the action of the Company in not allowing them to participate in the Program and to achieve the wages as did those employees ·at Plant Bowen and in the Macon Division.... The [non-participating employees] have however, by virtue of the discrimination practiced by the Company, suffered a financial loss.

ted with Plaintiff's Statement of Material Facts as to Which There is no Genuine Issue to be Tried).

*Id.* at 22. In short, Arbitrator Mathews concluded that employees at locations other than Plant Bowen and in the Macon Division were "deprived of the opportunity to effect savings" by their exclusion from the Pilot Incentive Pay Program. *Id.* at 21.

■ For the damage award in this action to be validly compensatory, there must be a causal relationship between the Company's breach of the Agreement and the loss claimed by the Union. *Baltimore Regional Joint Board v. Webster Clothes, Inc.,* 596 F.2d 95, 98 (4th Cir.1979) (affirming district court's vacation of arbitration award as unauthorized award of punitive damages where no evidence establishes that company's breach of collective bargaining agreement caused union employees to suffer monetary loss); *Westinghouse Electric Corp., Aerospace Division v. IBEW Local 1805,* 561 F.2d 521, 523–24 (4th Cir.1977), *cert. denied,* 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978) (same). "Ordinarily, an award that exceeds the monetary loss which an injured party suffered as a result of a contract breach is considered punitive." *Desert Palace v. Local Joint Executive Board of Las Vegas,* 679 F.2d 789, 794 (9th Cir.1982) (*citing Westinghouse,* 561 F.2d at 523–24). An arbitrator's denomination of an award as compensatory will not prevent a court from determining that the award is in fact punitive. *Westinghouse,* 561 F.2d at 524; *Baltimore Regional Joint Board,* 596 F.2d at 98.

Arbitrator Mathews' opinion in the April 27, 1990 Addendum fails to establish a causal relationship between the Company's violation of the Agreement and any monetary loss on the part of employees who did not participate in the Pilot Incentive Pay Program. The Addendum omits any discussion concerning what the position of those employees would have been in the absence of the Company's violation of the Agreement. The relevant question is what the position of employees at locations other than Plant Bowen and the Macon Division would have been had the Company not discriminatorily selected employees at those two sites to participate in the Pilot Incentive Pay Program. Under Arbitrator Mathews' interpretation of the Agreement, the Company could only have complied with Paragraph 69 by implementing the Pilot Incentive Pay Program company-wide or by not implementing the Program at all.[5]

Arbitrator Mathews made no finding that Georgia Power would, under any circumstances, have implemented the Program company-wide. Yet, his conclusion that employees at locations other than Plant Bowen and the Macon Division suffered monetary loss rests directly on the assumption that a company-wide program would have been implemented absent a violation of Paragraph 69. The only way that employees at locations other than Plant Bowen and the Macon Division could have been "deprived of the opportunity to effect savings" is if Georgia Power would have complied with Paragraph 69 by implementing the Pilot Incentive Pay Program at all of its plants. There was no evidence before the Arbitration Board, however, establishing that the Company would have implemented an incentive pay program company-wide without first undertaking a pilot experiment.[6] In the absence of such evidence, the monetary relief ordered by the Arbitration Board must be considered punitive.

In his Tentative Opinion and Award rendered February 7, 1990, Arbitrator Mathews appeared to recognize that an award of monetary damages to employees who did not participate in the Pilot Incentive Pay Program would be punitive in nature. In rejecting the Union's initial claim for monetary relief, Arbitrator Mathews stated:

5. Obviously, if Georgia Power had complied with Paragraph 69 by not implementing the Program at all, no employee can claim to have suffered monetary loss.

6. In fact, the record contains substantial evidence suggesting that the Company viewed an experimental pilot program as a prerequisite to implementation of a company-wide incentive pay program. James P. McCloy, Georgia Power's former Manager of Corporate Planning, testified that the Company "wanted to make sure that when they put the [incentive pay program] in, across the Company, they would have gone through some experience, learned where the problems were, and had an opportunity to fix them." Stipulated Exh. L, p. 9.

See also *Servomation of Chattanooga, Inc.,* 60 LA 402 (Rayson, 1973), cited by the Company, and in which it was held that the Union was not entitled to an award requiring the employer to pay other members of the bargaining unit an incentive bonus that it had paid to one unit member, admittedly in violation of the recognition clause of the collective bargaining unit, since the payment of the bonus to the recipient could not have deprived other members of a bonus, in view of the absence of the contract providing for bonus payments to the other members. As stated therein, a remedy of that nature is in the nature of a penalty, and does not "make whole" employees for a monetary loss suffered.

Accordingly, no monetary award will be made to the members of the Bargaining Unit, system wide.

Stipulated Exh. L, p. 59. In the Addendum of April 27, 1990, Arbitrator Mathews did not find that any of the facts surrounding the Company's implementation of the Pilot Incentive Pay Program had changed. Rather, he merely reached the legal conclusion that the Company's actions constituted a violation of Paragraph 69 of the Agreement. This additional legal conclusion in no way suggested that employees at locations other than Plant Bowen and the Macon Division had suffered no monetary loss.

It is perhaps significant that the Union does not attempt to establish the compensatory nature of the monetary damages awarded by the Arbitration Board on the same basis as Arbitrator Mathews. The Union contends that the monetary relief ordered by the Arbitration Board constitutes an award of "backpay."[7] The Union argues that employees who did not participate in the Pilot Incentive Pay Program " 'earned' their back pay to the same extent as those who 'earned' their bonuses under the incentive pay program." Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, p. 2. The crux of the Union's argument is that employees at Plant Bowen and in the Macon Division did not perform any additional work to receive bonuses under the Program:

In fact, no one at either of the locations where the bonus plan was in effect did anything differently than similarly-situated employees at any other location. The reality is that employees at Plant Bowen and in the Macon Division were paid greater wages than their counterparts in other locations for performing the identical work. If they "earned" their incentive pay by so doing, then, just as surely, the employees at other locations "earned" the back pay awarded by Arbitrator Mathews.

*Id.* at 2–3.

The primary difficulty with the Union's argument is that it is not based on any findings of fact by the Arbitration Board. Arbitrator Mathews did not find that employees at locations other than Plant Bowen and the Macon Division performed the same work as employees at those two sites. To the contrary, he stated, "From the evidence, it does appear that the Company was successful, by virtue of its Incentive Program, in getting employees to work smarter, and work harder." Stipulated Exh. G, p. 45. In other words, the employees at Plant Bowen and in the Macon Division were not, as the Union contends, simply paid more for the performing the same work that employees at other plants were performing.

■ The court concludes that the damages awarded by the Arbitration Board are punitive in nature. No factual or legal basis exists for Arbitrator Mathews' conclusion that the Company's violation of Paragraph 69 of the Collective Bargaining Agreement caused employees at locations other than Plant Bowen and the Macon Division to suffer monetary loss. As the Fourth Circuit stated in *Baltimore Regional Joint Board,* "There was simply no rationally probative evidence on the record before the arbitrator that [Georgia Power's] breach caused in fact a loss to its employees of any sort traditionally justifying an award of compensatory damages." 596 F.2d at 98.

The amount of damages awarded by the Arbitration Board further demonstrates that the award was not compensatory in nature. The Arbitration Board ordered the Company

7. Arbitrator Mathews never characterized the monetary relief he ordered as "backpay."

to. determine the amount of money it had paid to employees participating in the Pilot Incentive Pay Program for the years 1988 and 1989 and to distribute that same amount among Union employees who did not participate in the Program. In other words, the Company was to determine how much money it had paid to employees at Plant Bowen and in the Macon Division and to distribute that same amount among Union employees at Georgia Power's sixty other plants and its seven other divisions. Arbitrator Mathews settled on this amount of damages for the following reasons:

> In order to treat the "discriminated against employees" of the Bargaining Unit in the same manner as the preferred groups of employees, an amount of money equal to the total of that paid to the employees of the Bargaining Unit in preferred groups should be paid to those employees in the Bargaining Unit who did not participate in the Program. Those employees who did not participate may individually receive a lesser dollar amount than those employees who did participate in the Program, but as a member of the group, their group will have been treated the same as the groups of the preferred employees.

Stipulated Exh. L, p. 20.

Arbitrator Mathews himself recognized the entirely speculative nature of this damage award:

> The foregoing furnishes a measure of the damage suffered by the employees in the Bargaining Unit who were not allowed to participate in the Program, but a precise mathematical calculation of the amount of the damages is probably impossible. Had the employees in the Bargaining Unit, who were discriminated against, participated in the Program, the amounts received by them would have been the result of the savings effected by them. As demonstrated by the difference in the savings effected at Plant Bowen and at the Macon Division during 1988, the savings effected by the non-participating employees, had they participated in the Program, could well have been more or less than those at Plant Bowen and in the Macon Division; and the

dollar amount received by each employee could have been lesser or greater than that received by the individual employees at Plant Bowen and in the Macon Division. *Id.*

The measure of damages chosen by Arbitrator Mathews was not based on any findings regarding the actual savings employees at locations other than Plant Bowen and the Macon Division would have effected had they participated in the Incentive Pay Program. Arbitrator Mathews made no finding that such employees would have effected any savings and specifically recognized the possibility that such employees would have received less under the Incentive Pay Program than they are entitled to receive under his award. Arbitrator Mathews simply determined that the amount of savings effected by employees at Plant Bowen and in the Macon Division was the appropriate measure of damages in this case. This measure of damages, however, does not in any way correlate to the "loss" claimed by the Union and must be considered punitive.

The court has concluded above that the monetary relief ordered by the Arbitration Board constitutes an award of punitive damages. The court, however, need not reach the question of whether the Board possessed the authority to render such an award. Arbitrator Mathews himself determined that punitive damages were not appropriate in this case. During the course of the arbitration proceedings, the Union consistently took the position that the Company had acted in bad faith and urged Arbitrator Mathews to render an award of punitive damages. Stipulated Exh. L, p. 15. Arbitrator Mathews first rejected the Union's position in his Tentative Opinion and Award of February 7, 1990:

> The evidence has not established, as the Company has contended, that the Company in implementing the Pilot Incentive Pay Program acted wilfully or wantonly. The implementation occurred only after the Company had determined that it had negotiated in good faith with the Union to impasse. While the acts of the Company may not have constituted negotiation, or may have even been surface bargaining,

the evidence has not established any willful or wanton conduct on the part of the Company in connection with the Pilot Incentive Pay Program.

Stipulated Exh. G, p. 58. In his Addendum of April 27, 1990, Arbitrator Mathews reaffirmed his rejection of the Union's contention that the Company had acted willfully and in bad faith. Stipulated Exh. L, p. 16.

The award of monetary damages to Union members who did not participate in the Pilot Incentive Pay Program ."fails to draw its essence from the collective bargaining agreement." *Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers Local No. 361,* 726 F.2d 698, 699 (11th Cir.1984). The award is not sustainable as an award of compensatory damages because there was no evidence before Arbitrator Mathews establishing that the Company's breach of the Collective Bargaining Agreement caused employees who did not participate in the Pilot Incentive Pay Program to suffer any monetary loss. The award is not sustainable as an award of punitive damages because Arbitrator Mathews himself determined that the Company had not acted willfully or in bad faith.

■ This court is well aware that "arbitrators have broad powers to craft appropriate relief." *Bruno's, Inc. v. United Food and Commercial Workers Int'l Union, Local 1657,* 858 F.2d 1529, 1531 (11th Cir.1988). Indeed, it is well established that "[w]hen an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies." *United Steelworkers of America v. Enterprise Wheel & Can Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The remedy formulated by an arbitrator must, however, be grounded in the agreement of the parties. The remedy ordered by the Arbitration Board in this case is not.

The rationale of the Fourth Circuit in *Baltimore Regional Joint Board v. Webster Clothes, Inc.,* 596 F.2d 95 (4th Cir.1979), is generally applicable here. In that case, an arbitrator found that a clothing company had breached a collective bargaining agreement by subcontracting certain manufacturing work without union consent. The arbitrator determined that the company's breach of the agreement had caused the union to suffer a payroll loss of $80,000 and ordered the company to distribute that sum among its former employees. The district court, however, vacated the arbitration award on the basis of undisputed evidence that the clothing company's plant was operating at full capacity at the time the subcontract was in effect. Thus, even if the company had complied with the agreement, union employees would have been unable to perform the work the company had subcontracted. The district court concluded that "as a matter of law there had been no showing of actual damages resulting from [the company's] breach of the agreement." 596 F.2d at 98.

The Fourth Circuit affirmed on the basis that there was no evidence establishing that the company's breach of the agreement had caused any monetary loss. The Court of Appeals noted the wide "latitude afforded arbitrators in fashioning remedies in *United Steelworkers of America v. Enterprise Wheel & Car Corp.,*" but concluded:

> Nothing said in *Enterprise Wheel* negates the requirement that compensatory damages be based upon cognizable loss causally traceable to breach.... The award of damages in the present case does not draw its essence from the bargaining agreement, for the agreement's essence does not contemplate punitive, but only compensatory awards. Though not termed punitive, the award here can only be such, for there is nothing in the record showing it validly compensatory, and it is manifestly not nominal. In the absence of any provision for punitive awards, and of any substantiating proof of willful or wanton conduct, an arbitrator may not make an award of punitive damages for breach of a collective bargaining agreement.

596 F.2d at 98 (*citing Westinghouse Electric Corp., Aerospace Division v. IBEW Local 1805,* 561 F.2d 521, 523–24 (4th Cir.1977), *cert. denied,* 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978)).

The Fourth Circuit's reasoning in *Baltimore Regional Joint Board*, while instructive, is not wholly applicable in this case. The Collective Bargaining Agreement in this case does not contain a provision authorizing the Arbitration Board to award punitive damages. However, in *Willoughby Roofing & Supply Co. v. Kajima Int'l Inc.*, 598 F.Supp. 353 (N.D.Ala.1984), *aff'd on basis of district court opinion*, 776 F.2d 269 (11th Cir.1985), the Eleventh Circuit upheld the authority of an arbitration panel to render an award of punitive damages despite the absence of an express provision for such damages in the parties' contract. *See also Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1386–87 (11th Cir.1988).[8] An open question thus remains as to whether the Arbitration Board possessed the general authority to render an award of punitive damages in this case.

No question remains, however, regarding the absence "of any substantiating proof of willful or wanton conduct" on the part of Georgia Power. *Baltimore Regional Joint Board*, 596 F.2d at 98. Arbitrator Mathews determined that "the evidence has not established any willful or wanton conduct on the part of the company in connection with the Pilot Incentive Pay Program." Stipulated Exh. G, p. 58. While "an arbitrator is not required to make formalized findings or to offer reasons for his decisions, when he does so, a court may properly consider them." *United Electrical, Radio and Machine Workers of America, Local 1139 v. Litton Microwave Cooking Products, Litton Systems, Inc.*, 704 F.2d 393, 397 (8th Cir.1983).

Nothing said in *Willoughby Roofing & Supply* suggests that an arbitration panel may render an award of punitive damages against a party where that panel specifically finds that the party has not engaged in any willful or wanton behavior.[9] The Union has offered no argument or evidence to establish that the Collective Bargaining Agreement conferred such authority on the Arbitration Board.[10] The court is thus constrained to conclude that the Arbitration Board's award of monetary damages does not draw its essence from the Collective Bargaining Agreement.

The Union contends that if the court determines that the remedy ordered by the Arbitration Board is punitive in nature, it should remand this action. No basis for a remand exists, however. There was no evidence before the Arbitration Board establishing that the Company's breach of the Collective Bargaining Agreement caused any employees to suffer monetary loss. In addition, the Arbitration Board has already held two evidentiary hearings and two executive sessions in this matter.

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED. The portion of the arbitration award which requires Georgia Power to pay monetary damages to Union employees who did not participate in the Pilot Incentive Pay Program is hereby VACATED. Defendant's motion for summary judgment is DENIED.

8. *Willoughby Roofing & Supply* is in conflict with several circuit court decisions holding that arbitrators may not award punitive damages absent an express provision in a collective bargaining agreement. *See Howard P. Foley Co. v. Int'l Brotherhood of Electrical Workers, Local 639*, 789 F.2d 1421 (9th Cir.1986); *Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers, Local Union 34, AFL–CIO v. General Pipe Covering, Inc.*, 792 F.2d 96 (8th Cir.1986); *Baltimore Regional Joint Board v. Webster Clothes, Inc.*, 596 F.2d 95 (4th Cir.1979). In *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1388 (11th Cir.1988), Judge Tjoflat concurred specially to "air [his] reservations about the wisdom" of *Willoughby Roofing & Supply*.

9. In *Willoughby Roofing & Supply*, a panel of arbitrators awarded punitive damages to a subcontractor where it found the contractor "guilty of willful misrepresentations of material fact concerning the transaction at it issue." 598 F.Supp. at 354–55.

10. The Union, relying on *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580 (5th Cir.1980) has merely contended that by submitting the question of the appropriate remedy in this case to arbitration the Company acceded to any award the Arbitration Board rendered. *Piggly Wiggly*, however, addresses only the question of an arbitrator's authority to resolve a specific question, not the scope of the arbitrator's remedial authority. In any case, the Union overlooks the requirement that an arbitrator's award draw its essence from the collective bargaining agreement.

Accordingly, Plaintiff's motion for an extension of time within which motions for summary judgment may be filed [15–1] is DISMISSED AS MOOT. Plaintiff's motion for an extension of time within which responses to summary judgment motions may be filed [18–1] is also DISMISSED AS MOOT. Plaintiff's motion for summary judgment [17–1] is GRANTED. Defendant's motion for summary judgment [16–1] is DENIED.

SO ORDERED.