**ISLAND CREEK COAL COMPANY,**
**Plaintiff,**

v.

**LOCAL UNION 2232, UNITED MINE**
**WORKERS OF AMERICA, et al.,**
**Defendants.**

**Civ. A. No. 92–0174–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 23, 1993.

Mary Lynn Tate, Abingdon, VA, Keith Fischler, Lexington, KY, for plaintiff.

Susan Debra Oglebay, Castlewood, VA, for defendants.

### *MEMORANDUM ORDER*

WILSON, District Judge.

Plaintiff Island Creek Coal Company ("Island Creek") brings this action for declaratory and injunctive relief against defendants International Union, United Mine Workers of America; District 28, United Mine Workers of America; and Local Union 2232, United Mine Workers of America (collectively "UMWA"). Island Creek seeks to vacate an "enforcement penalty" of $1000.00 imposed

by an arbitrator pursuant to the National Bituminous Coal Wage Agreement ("NBCWA"). UMWA has filed a counterclaim seeking to enforce the penalty. The court has jurisdiction pursuant to 29 U.S.C. § 185. The court finds that the arbitrator exceeded the scope of his authority in imposing the penalty and vacates that portion of his award.

## I.

The NBCWA prohibits the performance of "classified work" by supervisory personnel.[1] Island Creek and UMWA have a history of disputes that dates to 1981 over Island Creek's performance of classified work. In that year Arbitrator Marlyn Lugar arbitrated a grievance concerning the performance of classified work at the same mine involved in this case. Finding that Island Creek violated the NBCWA's prohibition, Lugar ordered Island Creek to cease and desist. He further suggested that "punitive damages" might be appropriate in the event of future violations. The parties settled the same kind of grievance in 1988. Island Creek agreed that it would stop its supervisory employees from performing classified work and abide by Lugar's 1981 decision. The issue arose again in 1990 at the same mine. Arbitrator Peter Judah restated Lugar's cease and desist order and imposed punitive damages of $2000.00. Arbitrator Judah emphasized that the punitive damages were based on the 1988 settlement agreement and not the bargaining agreement itself.

Island Creek and UMWA entered into the present version of the NBCWA on February 1, 1988.[2] In 1991 an Island Creek employee filed a grievance asserting that Island Creek violated the agreement when one of its supervisory employees performed classified work. The parties ultimately submitted the matter to arbitration pursuant to the terms of the NBCWA. The arbitrator, Bernard H. Cantor, reviewed the history of similar disputes at the mine and the resolution of those disputes. Finding that there had been similar violations and an earlier cease and desist order, he stated:

If there is something more than a straightforward violation, if there is a pattern of repeated violations, then there can and should be a mandate to cease and desist.

A Cease and Desist order itself, however, must be enforceable. It does not require the existence of a new contract, even though Arbitrator Judah reached for that further support for his decision. The straightforward fact that the Company had been ordered to stop it is sufficient to authorize the arbitrator standing in the stead, as he does, of courts of general jurisdiction for the purpose of dealing with this contract, to lay down a reasonable amount as a rule constituting the imposition of a penalty for violation of a prior order of *quasi*-judicial body.

This is *not* "punitive damages" in the tort sense. The application of that term to damages given in this situation is absolutely inappropriate. It is an enforcement penalty and it stands as such and is justified by the long history within the Bituminous Coal Industry contract. The contract has grown over time as a way of life. To those who live by it, there must be no wrong without a remedy. Frustrations have led to Cease and Desist orders. Such an order means nothing unless it can be enforced. The contract contemplates effective enforcement.

(Compl. Ex. 1 at 30–31). Arbitrator Cantor then found that Island Creek violated the

---

1. Article IA, Section (c) of the 1988 version of the NBCWA provides:

   Supervisory employees shall perform no classified work covered by this Agreement except in emergencies and except if such work is necessary for the purpose of training or instructing classified *Employees*. When a dispute arises under this section, it shall be adjudicated through the grievance machinery and in such proceedings the following rule will apply: the burden is on the Employer to prove that classified work has not been performed by supervisory personnel.
   (Pl.'s Statement of Material Facts Not in Dispute, Ex. 1 at 5).

2. *See* National Bituminous Coal Wage Agreement Between Island Creek Corporation and International Union United Mine Workers of America (Pl.'s Statement of Material Facts Not in Dispute, Ex. 1).

NBCWA, awarded the grievant compensation, restated the cease and desist order, and ordered Island Creek to pay UMWA an "enforcement penalty" of $1000.00 because he had found that Island Creek had violated an earlier cease and desist order.

## II.

A federal court's review under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, of an arbitrator's award is very limited. *Cannelton Indus. Inc. v. District 17, United Mine Workers,* 951 F.2d 591, 593 (4th Cir.1991). The parties to a collective bargaining agreement bargain for the arbitrator's interpretation, "and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation . . . is different from his." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). Moreover, "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). *See also Clinchfield Coal Co. v. United Mine Workers Dist. 28, Local Union* 1098, 567 F.Supp. 1431, 1434 (W.D.Va.1983), *aff'd,* 736 F.2d 998 (4th Cir.1984).

At the very least, however, the arbitrator's decision "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 377, 98 L.Ed.2d 286 (1987). Absent an express provision in the collective bargaining agreement, the industrial common law ordinarily does not, according to the court of appeals for this circuit, permit the arbitrator to impose punitive damages.[3] *See Cannelton Indus.,* 951 F.2d at 594; *Baltimore Regional Joint Bd.,* 596 F.2d at 98; *Norfolk & W.R. Co. v. Brotherhood of Ry., Airline and S.S. Clerks,* 657 F.2d 596, 602 (4th Cir.1981); *Westinghouse Electric Corp, Aerospace Div. v. International Bhd. of Electric Workers,* 561 F.2d 521, 523–24 (4th Cir.1977), *cert. denied,* 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978).[4] It follows that this case presents two questions: whether the award is punitive and, if so, whether it draws its essence from the collective bargaining agreement.

### A. The Award

Although Arbitrator Cantor distinguishes an "enforcement penalty" from "'punitive damages' in the tort sense," the distinction is not relevant here because the enforcement penalty is still punitive in nature.[5]

---

**3.** Ordinarily punitive damages are not recoverable in contract actions. Although there is some language in the cases in the labor field to the effect that an arbitrator might have some authority to impose punitive damages to redress "willful or wanton conduct," neither the court of appeals for this circuit nor the Supreme Court has so held. *Baltimore Regional Joint Bd. v. Webster Clothes Inc.,* 596 F.2d 95, 98 (4th Cir. 1979). It is unnecessary to decide the issue in this case, however, because Arbitrator Cantor found no evidence of willful conduct. According to Arbitrator Cantor: "the action of the supervisors at their level was not the instigated or specified action of the Company. To the contrary, testimony of the manager of this mine is clear and cogent that he has, from the beginning of his tenure, tried to settle all complaints, tried to clear the deck and has worked carefully to persuade supervisors that they themselves can be punished for failure to obey this rule." (Compl. Ex. 1 at 32–33).

**4.** At least three other circuits are in accord. *See Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica Local 610,* 959 F.2d 2 (1st Cir.1992); *Howard P. Foley Co. v. International Bhd. of Elec. Workers, Local 639,* 789 F.2d 1421, 1423 (9th Cir.1986); *United Elec., Radio and Mach. Workers, Local 1139 v. Litton Microwave Cooking Products, Litton Systems, Inc.,* 704 F.2d 393, 398 (8th Cir.1983).

**5.** Arbitrator Cantor appears to consider the enforcement penalty nonpunitive because it is not simply an attempt to punish, but rather it is an attempt to coerce through punishment. Although that distinction may be relevant in judicial proceedings where the criminal or civil nature of contempt fines is at issue, *see Bagwell v. International Union, United Mine Workers,* 244 Va. 463, 423 S.E.2d 349 (1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993), the issue here is whether the award is punitive.

Arbitrator Cantor awarded the individual grievant compensation for the invasion of his work time, and no other actual damages have been shown. Thus, as in *Baltimore Regional*, "there is nothing in the record showing [the award to be] validly compensatory, and it is manifestly not nominal." 596 F.2d at 98. The award, therefore, though considered nonpunitive by Arbitrator Cantor, is in fact punitive. *See id.; Westinghouse*, 561 F.2d at 523–24; *Georgia Power Co. v. International Bhd. of Elec. Workers, Local 84*, 995 F.2d 1030, 1032 (11th Cir.1993) ("[a]n arbitrator's denomination of an award as compensatory will not prevent the court from determining that the award is in fact punitive").

### B. *The Agreement*

■ The NBCWA does not expressly provide for punitive awards. If the award is to be validated, therefore, it must find support in the industrial common law which, according to the Supreme Court, "is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers*, 363 U.S. at 581–82, 80 S.Ct. at 1352. On that score the court finds that Arbitrator Cantor has imposed his own notion of industrial justice.

In concluding as he did, Arbitrator Cantor reasoned that "[t]he contract contemplates effective enforcement," that effective enforcement requires cease and desist orders, and

that cease and desist orders are meaningless without enforcement penalties. His reasoning, which seems to be an effort to bootstrap authority, fails to recognize two points. First, remedies are available if the parties do not abide by the arbitrator's decision. A party may bring an action in district court to enforce the arbitrator's award whether that award is for a monetary obligation or for a specific relief. Thus, a party may enforce in district court an arbitrator's "cease and desist order" if that order draws its essence from the collective bargaining agreement. *See General Dynamics Corp. v. Industrial Union of Marine and Shipbuilding Workers*, 469 F.2d 848, 851 (1st Cir.1972).[6] That award would then be backed by the equitable powers of the court. Second, the arbitrator is empowered by the collective bargaining agreement, not by unbridled notions of remedial justice.[7] Generally, the parties bargain for the arbitrator's judgment as to an appropriate compensatory remedy for violation of their collective bargaining agreement. Absent some expression of mutual assent that bargain does not invest the arbitrator with authority to punish.

### III.

■ Punitive damages are not available in either a suit for breach of a collective bargaining agreement or in a suit for breach of a

6. In fact, "[n]othing could be closer to the core of the federal labor arbitration policy [than] ... to give judicial enforcement, specifically provided for by the [collective bargaining agreement], to an arbitrator's injunction, ..." *General Dynamics Corp.*, 469 F.2d at 851.

7. Although Arbitrator Cantor's decision is based upon his apparent perception that an arbitrator has the inherent authority to impose a punitive award if necessary in the arbitrator's view to effectively enforce a collective bargaining agreement, very liberally construed his opinion also suggests that the parties' course of dealing at this shop invested him with authority to impose those awards. That course of dealing was, however, insufficient. In 1981 Arbitrator Lugar found that supervisory employees had performed classified work in violation of the NBCWA and ordered Island Creek to cease and desist. Arbitrator Lugar also suggested that punitive damages might be imposed if there were additional violations. In 1988 the parties settled a similar grievance, and Island Creek agreed to abide by Lugar's

1981 decision. In 1991 Arbitrator Peter Judah found that supervisory employees had again performed classified work. He issued a cease and desist order. He also imposed punitive damages based on the 1988 settlement agreement.

None of those events invested Arbitrator Cantor with authority to impose a punitive award. An arbitrator cannot create his own authority. That Arbitrator Lugar believed in 1981 that he might have authority to impose punitive damages in the event of future violations is clearly insufficient. Likewise, the fact that the parties agreed to abide by his decision is insufficient. Lugar decided only that supervisory employees performed classified work, and he ordered the Company to cease and desist. The fact that Arbitrator Judah had found earlier that he had authority to impose punitive damages is immaterial in light of the fact that the present case was not decided under a new agreement negotiated against the backdrop of a clear, common understanding that punitive awards would be within the arbitrator's authority.

duty of fair representation. *See Merk v. Jewel Food Stores Div. of Jewel Cos.,* 945 F.2d 889, 899 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). The potential for high punitive awards in those actions "might threaten the goal of harmonious resolution of labor disputes which is at the core of the national labor policy." *Id.* at 899. Although the enforcement penalty in the present case is a relatively small one, there is no reason why—if imposition of such penalties is committed to the remarkably unbridled discretion of a labor arbitrator—that onerous, yet unreviewable burdens could not be imposed. If the parties are to chart such a course they should do so in unmistakable terms.

For the reasons stated above, the arbitrator's award will be enforced in part and vacated in part.

An appropriate order will issue.

### FINAL ORDER

In accordance with the court's memorandum opinion entered on this date, it is **ORDERED** and **ADJUDGED** that the award of the arbitrator, be and the same, hereby, is enforced in part and vacated in part and this case is **ORDERED** stricken from the docket of the court.