951 F.2d 591
 139 L.R.R.M. (BNA) 2001, 120 Lab.Cas. P 11,056
 CANNELTON INDUSTRIES, INCORPORATED, a corporation, Plaintiff-Appellee,
v.
DISTRICT 17, UNITED MINE WORKERS OF AMERICA, Local Union
8843, United Mine Workers of America,
unincorporated associations,
Defendants-Appellants.
 No. 91-1535.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 28, 1991.
Decided Dec. 6, 1991.
As Amended Jan. 7, 1992.
 
 Charles F. Donnelly, Charleston, W.Va., argued (Kevin F. Fagan, on brief), for defendants-appellants.
 Gene Webster Bailey, II, Jackson & Kelly, Charleston, W.Va., argued (Daniel L. Stickler, David D. Johnson, on brief), for plaintiff-appellee.
 Before PHILLIPS and HAMILTON, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 The United Mine Workers (the Union) and employees of Cannelton Industries appeal the judgment of the district court vacating an arbitration award which found appellee Cannelton in violation of the National Bituminous Coal Wage Agreement of 1988 (NBCWA) and ordered Cannelton to pay monetary damages to its aggrieved employees. The district court ruled that because the arbitrator failed to identify any cognizable loss suffered by the employees, the award was a purely punitive measure which is not authorized by the NBCWA. On appeal, we must determine the proper judicial response to an arbitration opinion that fails to expressly consider and resolve the determinative question presented to the arbitrator. Because we believe this type of critical ambiguity in the reasoning of an arbitration opinion requires clarification by the arbitrator, we vacate the district court's judgment and remand the cause with instructions.
 
 
 2
 * The dispute concerns Cannelton's use of outside contractors for renovations in its coal preparation plant. The union contends these jobs should have been performed by union employees in accordance with the NBCWA.
 
 
 3
 Cannelton's coal processing plant was built by outside contractors in 1952, and it was substantially rebuilt by outside contractors in 1966. At one time, the company employed its own construction crew, but the crew was abolished in 1982. In 1987, Cannelton hired an engineer from Bays, Inc., to evaluate the flooring system in the plant, and Cannelton contracted with Bays to construct "an entire new flooring system for the entire preparation plant." An outside contractor replaced the plant's magnetite floor in November and December of 1987.[1] Cannelton maintained that this construction was merely the first phase of a complete reconstruction of the flooring system.
 
 
 4
 Cannelton employees filed Grievance No. 88017-88-1146 protesting the use of outside contractors for the 1987 floor work and arguing that hiring outside contractors violated sections (g)(2) and (i) of Article IA of the NBCWA. Section (g)(2) prohibits contracting out of "[r]epair and maintenance work of the type customarily performed by classified Employees at the mine or central shop." Section (i) provides:
 
 
 5
 All construction of mine or mine related facilities ... customarily performed by classified Employees of the Employer normally performing construction work in or about the mine in accordance with prior practice and custom, shall not be contracted out at any time unless all such Employees with necessary skills to perform the work are working no less than 5 days per week.
 
 
 6
 Article XXIII, section (c) of the NBCWA provides for the resolution of disputes through a four-step grievance procedure culminating in arbitration.
 
 
 7
 This dispute was submitted to Arbitrator I.M. Lieberman, who found that the 1987 floor work was not repair and maintenance work under (g)(2) but was construction work under section (i). However, Lieberman ruled that Cannelton had not violated section (i) because the work was not "customarily performed by classified employees of the mine" (The Lieberman Award). This decision is not itself in controversy.
 
 
 8
 Cannelton employees later filed Grievance No. 84-17-87-1057, challenging Cannelton's compliance with a 1978 voluntary grievance settlement that required Cannelton to give the union specific advance notice of its intention to hire outside contractors to perform work at the plant. In August of 1988, Arbitrator Martin M. Volz ruled that "prior to any contractor coming onto the property the company is to provide the Local Union with a 'New Project Form' or a written statement containing equivalent information regarding work being performed on the property by an outside contractor" (The Volz Award).
 
 
 9
 When Cannelton hired outside contractors to complete further work in the plant in late 1988 and early 1989, it submitted a New Project Information Form describing the work as "Removing Old Steel and Equipment from Prep Plant." On January 24, 1989, the union filed two grievances. Grievance No. 8843-989-017 complained of:
 
 
 10
 Contractors replacing flooring and removing old flooring also hand rails on operators floor. Replaceing [sic] walk way in front of the coal filter. This is work that is customarily done by Cannelton's employees. We are asking for the appropriate monetary remedy.
 
 Grievance No. 8843-989-017 maintained:
 
 11
 Contractors removed tank and pipe lines in preparation plant. This is work that is customarily done by employees of Cannelton. We are asking for appropriate monarity remenedy [sic]. Also the co. is failing to notify the Union when Contractors are coming on the job.
 
 
 12
 These grievances were submitted to Arbitrator Patrick J. Basial, who found that Cannelton had not violated the NBCWA as alleged in Grievance No. 8843-989-020 because the removal of the tank and pipe lines was construction work of the type not customarily completed by union employees.
 
 
 13
 With respect to Grievance No. 8843-989-017, Basial ruled that Cannelton violated the terms of the Volz arbitration award by failing to submit a sufficiently specific project information form. Neither party disputes this portion of Basial's decision. Basial noted that he did not find it necessary "to reach and to resolve the underlying substantive issue as to whether this work was 'repair and maintenance work' or 'construction work.' " Therefore, he made no determination on the issue of whether using outside contractors for work on the floors and handrails[2] violated Article IA, section (g)(2) or (i) of the NBCWA. Basial also refrained from deciding whether the Lieberman Award sanctioning outside contracts for the 1987 floor work was res judicata. However, opining that Cannelton's failure to give proper notice hindered labor relations and increased labor strife, Basial awarded the union money damages in an amount equal to 100 hours compensation under the labor contract. He determined that the work listed in both grievances required approximately 200 hours, and Basial estimated that the work on the flooring and hand rails was at least one-half of that total.
 
 
 14
 Cannelton then brought this action in federal district court challenging the monetary award, and the district court vacated the award on the grounds that the damage award was a purely punitive measure that did not "draw its essence" from the bargaining agreement as required by United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The district court reasoned that although the agreement contemplates compensation only for lost work hours, not lost labor harmony, Basial expressly had declined to determine whether the work at issue was the type that the grievants would have been entitled under the NBCWA to perform had they been notified in advance. This appeal by the union followed. In it, the union seeks to have us reverse the district court's judgment vacating Arbitrator Basial's award and order the award reinstated.
 
 II
 
 15
 Federal courts are authorized to review the decisions of labor arbitrators under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. However, this review is extremely limited. Enterprise Wheel, 363 U.S. 593, 80 S.Ct. 1358 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Because the parties have bargained for the arbitrator's interpretation of an agreement, "the courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his." Enterprise Wheel, 363 U.S. at 599, 80 S.Ct. at 1362. The selection of remedies is almost exclusively within the arbitrator's domain. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). There is, however, one general, but critical, limitation on arbitrators' discretion:
 
 
 16
 [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources; yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 17
 Id. at 597, 80 S.Ct. at 1361. While arbitrators need not give their reasons for an award, Enterprise Wheel, 363 U.S. at 598, 80 S.Ct. at 1361, in some cases reviewing courts must rely on the arbitrator's reasoning to determine whether he was applying contractual terms or "his own brand of industrial justice" to resolve disputes. When an arbitrator does provide reasons for a decision and when those reasons are so ambiguous as to make it impossible for a reviewing court to decide whether an award draws its essence from the agreement, the court may remand the case to the arbitrator for clarification. Young Radiator Co. v. Int'l Union, United Auto Workers, 734 F.2d 321 (7th Cir.1984); Grand Rapids Die Casting Corp. v. United Auto Workers, 684 F.2d 413 (6th Cir.1982); Randall v. Lodge No. 1076, Int'l Ass'n of Machinists & Aerospace Workers, 648 F.2d 462 (7th Cir.1981).
 
 
 18
 We face this type of critical ambiguity in reviewing Basial's award and the district court's legal conclusion that the award did not draw its essence from the agreement. It is not clear from Basial's opinion whether he awarded money damages because Cannelton violated the notice requirements and the Volz award or because Cannelton violated the NBCWA by contracting out work that union employees should have performed. If Basial ruled for the former reason, as Cannelton argues, the award is purely punitive and it does not draw its essence from the NBCWA. However, if Basial ordered monetary damages to compensate employees for work they were entitled to perform under the NBCWA, the award might reasonably be construed as compensatory damages for a cognizable loss of union work. The union contends that Basial necessarily implied that the work at issue was of the type that would customarily be performed by union employees. However, without an explicit finding on this point, we are left with a wholly ambiguous opinion which makes impossible any reasoned determination of whether the award draws its essence from the contract.
 
 
 19
 We faced a similar difficulty in Clinchfield Coal Co. v. District 28, United Mine Workers, 720 F.2d 1365 (4th Cir.1983). In Clinchfield, the union maintained that the company's use of outside contractors prompted layoffs of union employees. The arbitrator ruled in favor of the union, but he did not consider whether the outside contracts involved work on "coal mining operations" (prohibited under the agreement) or "coal lands" (permitted under the agreement). The arbitrator also declined to determine whether the layoffs resulted from the outside contracts or economic factors. We rejected the union's argument that these issues were implicitly resolved in their favor and vacated the award, holding that:
 
 
 20
 Where, as here, the arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract.
 
 
 21
 Id. at 1369.
 
 
 22
 The instant case presents a problem similar to the one we faced in Clinchfield. Basial failed to discuss whether the outside contracts violated the contract to the extent that the union employees should be compensated for lost work. A court's power to vacate an award because of an arbitrator's failure to address a crucial issue necessarily includes a lesser power to remand the case to the same arbitrator for a determination of that issue. See Grand Rapids Die Casting, 684 F.2d at 416 (remanding on this basis); Randall, 648 F.2d at 468 (same).
 
 
 23
 We must be concerned not to broaden the scope of judicial review of arbitration decisions nor to lengthen a process that is intended to resolve labor disputes quickly. But in this case we are not in a position to determine whether Basial's monetary award drew its essence from the agreement without an arbitral decision as to whether Cannelton's outside contracts violated sections (g)(2) and (i) of Article 1A of the NBCWA.
 
 III
 
 24
 For the above reasons, we vacate the judgment of the district court which vacated Arbitrator Basial's award and remand the cause to the district court for further proceedings. On remand, the district court is instructed to reinstate the unchallenged portion of the arbitrator's award which ruled that Cannelton had violated the prior notice obligation imposed by the Volz Award. In addition, the district court is instructed to remand the remainder of the grievance to the arbitrator for a determination whether the outside contract work, which is the subject of the grievance, violated the NBCWA in any way justifying a compensatory award.
 
 
 25
 SO ORDERED.
 
 HAMILTON, Circuit Judge, dissenting:
 
 26
 Because I agree with the district court that Arbitrator Basial's opinion was a purely punitive measure that did not draw its essence from the bargaining agreement as required, I respectfully dissent.
 
 
 27
 The majority finds the opinion of Arbitrator Basial to be ambiguous and in need of clarification. I disagree. As I read his decision, Arbitrator Basial clearly made an award of monetary damages because Cannelton violated the notice requirements of the Volz Award. If this is the case, the majority readily acknowledges that "the award is purely punitive and it does not draw its essence from the NBCWA." At 594.
 
 
 28
 As the majority correctly notes, the parties do not dispute that Cannelton violated the notice provisions of the earlier Volz Award. In fashioning his award in Grievance No. 8843-989-017, i.e., as to "replacing flooring and removing old flooring also hand rails on operators floor," Arbitrator Basial noted that he did not find it necessary "to reach and to resolve the underlying substantive issue as to whether this work was 'repair and maintenance work' or 'construction work.' " Therefore, as the majority notes, he made no determination on this issue of whether using outside contractors to perform this work violated applicable provisions of the bargaining agreement. (The NBCWA).
 
 
 29
 Instead, Arbitrator Basial found that Cannelton had violated the terms of the Volz Award by not providing the local union with a "New Project Form," or the equivalent written information, prior to any contractor going onto the Cannelton property. As Basial noted, "In no event can the information contained in this form be considered adequate or in fact any notice whatsoever to the Union regarding the Company's then existing intention to use an outside contractor to perform all of the Preparation Plant Work referred to in Grievance No. 8843-989-017."
 
 
 30
 In concluding his opinion, Arbitrator Basial made it clear that he was not identifying any cognizable loss suffered by the Union employees and further that he was basing his award upon a violation of the Volz Award by Cannelton:
 
 
 31
 This Arbitrator disagrees with the Company's position that its failure in this instance to provide the Union with appropriate and adequate information (as mandated by Arbitrator Volz's Award) regarding its intentions as to use of an outside contractor to perform the work at issue caused no harm and, therefore, warrants no economic remedy. As a result of the Company's failure to comply with Arbitrator Volz's Award, adequate communication between the Company and the Union did not take place[,] labor relations between the Company and the Union were not enhanced and labor strife was not reduced.
 
 
 32
 As a remedy for the Company's failure in this instance to comply with Arbitrator Volz's Award, the Company is directed to pay to the Union an amount equal to 100 hours compensation [footnote omitted] at the average straight time rate of the signatory Grievants to Grievance Nos. 8843-989-017 and 8843-989-020. The Union shall thereafter equitably determine the ultimate allocations of this amount, and make such allocations as it has determined among the respective Grievants.
 
 
 33
 Arbitrator Basial made no finding that the work was of the type that would have been performed by the grievants had they been properly notified in advance and his monetary award lacks any finding that the grievants were deprived of wages or an opportunity to earn wages. His monetary award was clearly intended as punishment for "the Company's failure in this instance to comply with Arbitrator Volz's Award...." As such the award does not draw its essence from the bargaining agreement which contemplates compensatory rather than punitive damages. Although Arbitrator Basial did not term the award punitive, it can only be deemed punitive in the absence of Basial's finding that there was any monetary loss incurred as a result of a violation of the Volz Award.
 
 
 34
 Finding no ambiguity in Basial's Award, I am constrained to conclude that it was punitive--he awarded damages because Cannelton violated the Volz Award. As such Arbitrator Basial's award does not draw its essence from the bargaining agreement (the NBCWA) and it cannot stand. United States Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). It has long been recognized that "the courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his," Id. at 599, 80 S.Ct. at 1362, but just the opposite is true where the award does not draw its essence from the bargaining agreement:
 
 
 35
 [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources; yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 36
 Id. at 597, 80 S.Ct. at 1361. I would, accordingly, affirm the decision of the district court.
 
 
 
 [1]
 The work consisted of removing the metal floor plate which had comprised the old floor surface, relocating heavy equipment, removing most of the existing structural steel, installing a redesigned steel skeleton for the floor, installing a drainage system for the floor, installing metal Q-decking and wire mesh for reinforcement purposes, and pouring a concrete floor
 
 
 [2]
 Basial determined that the portion of the grievance involving walkways was untimely