**ISLAND CREEK COAL COMPANY,**
Plaintiff–Appellee,

v.

**DISTRICT 28, UNITED MINE
WORKERS OF AMERICA,**
Defendant–Appellant,

and

**Local Union 2232, United Mine Workers
of America; International Union, United
Mine Workers of America, Defendants.**

No. 93–2305.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1994.

Decided July 6, 1994.

---

**ARGUED:** Susan Debra Oglebay, Kobak & Oglebay, Pound, VA, for appellant. David J. Laurent, Polito & Smock, P.A., Pittsburgh, PA, for appellee. **ON BRIEF:** Daniel L. Fassio, Pittsburgh, PA, for appellee.

Before WILKINS and HAMILTON, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge WILKINS and Judge ELLIS joined.

### OPINION

HAMILTON, Circuit Judge:

District 28, United Mine Workers of America (District 28), appeals the district court's decision vacating the penalty portion of an arbitration award. For the reasons stated herein, we affirm.

### I

The National Bituminous Coal Wage Agreement of 1978, 1984, and 1988 (NBCWA) prohibits the performance of

"classified work"[1] by supervisory personnel.[2] Island Creek Coal Company (Island Creek) and the International Union, United Mine Workers of America; District 28, United Mine Workers of America; and Local Union 2232, United Mine Workers of America (collectively UMWA) have a history of disputes dating to 1981 over Island Creek's performance of classified work. In that year Arbitrator Marlyn E. Lugar (Lugar) arbitrated a grievance concerning the performance of classified work at the Virginia Pocahontas Number 5 Mine (the Mine).[3] Finding that Island Creek violated the NBCWA's prohibition on classified work, Arbitrator Lugar ordered Island Creek to cease and desist. He intimated that "punitive damages" might be appropriate in the event of future violations.

In 1988, the parties settled the same type of grievance. Island Creek agreed that it would stop its supervisory employees from performing classified work and would abide by Arbitrator Lugar's 1981 decision. The issue arose again in 1990 at the Mine. Arbitrator Peter J. Judah (Judah) restated Arbitrator Lugar's cease and desist order and imposed punitive damages of $2,000.[4] Arbitrator Judah emphasized that the punitive damages were based on the 1988 settlement agreement rather than on the NBCWA itself.

On February 1, 1988, Island Creek and UMWA entered into the present version of the NBCWA. The 1988 NBCWA contained a mandatory means for resolving disputes arising under that agreement: a three-step grievance procedure followed, if necessary, by final and binding arbitration. The NBCWA does not expressly provide for an award of punitive damages.

On or about November 13, 1991, one of Island Creek's employees filed a grievance alleging that a foreman had violated the 1988 NBCWA by performing classified work. The parties ultimately submitted the matter to arbitration pursuant to the terms of the NBCWA. Arbitrator Bernard H. Cantor (Cantor) reviewed the history of disputes at the Mine. Determining that there had been similar violations and an earlier cease and desist order, he stated:

If there is something more than a straight forward violation, if there is a pattern of repeated violations, then there can and should be a mandate to cease and desist. A cease and desist order itself, however, must be enforceable. It does not require the existence of a new contract, even though Arbitrator Judah reached for that further support for his decision. The straightforward fact that the Company had been ordered to stop it is sufficient to authorize the arbitrator standing in the stead, as he does, of courts of general jurisdiction for the purpose of dealing with this contract, to lay down a reasonable amount as a rule constituting the imposition of a penalty for violation of a prior order of *quasi*-judicial body.

This is *not* "punitive damages" in the tort sense. The application of that term to damages given in this situation is absolutely inappropriate. It is an enforcement penalty and it stands as such and is justified by the long history within the Bituminous Coal Industry contract. The contract has grown over time as a way of life. To those who live by it, there must be no wrong without a remedy. Frustrations have led to Cease and Desist orders. Such an order means nothing unless it can be enforced. The contract contemplates effective enforcement.

1. Classified work is bargaining unit work reserved for classified employees.

2. Article 1A, § (c) of the 1988 version of the NBCWA provides:
 Supervisory employees shall perform no classified work covered by this Agreement except in emergencies and except if such work is necessary for the purpose of training or instructing classified Employees. When a dispute arises under this section, it shall be adjudicated through the grievance machinery and in such proceedings the following rule will apply: The burden is on the Employer to prove that classified work has not been performed by supervisory personnel.
 (J.A. 104–05).

3. Island Creek oversees several mining operations in Virginia, including the Virginia Pocahontas Number 5 Mine.

4. Island Creek paid this punitive award on July 23, 1991, apparently without protest.

(J.A. 71). Arbitrator Cantor then issued the following award:

(1) Grievant is allowed compensation for one-half a shift pay at straight time.

(2) The Cease and Desist order applicable to this mine entered by Arbitrator Lugar, restated by Arbitrator Judah, is here restated.

(3) *A penalty for failure to obey the Cease and Desist order, based on the experience since the Judah order is hereby imposed in the amount of $1,000 to be paid to the Union.*

(J.A. 74–75) (Emphasis added).

After Arbitrator Cantor's award, Island Creek brought an action in the United States District Court for the Western District of Virginia for declaratory and injunctive relief against the UMWA. Island Creek sought to vacate the "enforcement penalty" of $1,000 imposed by Arbitrator Cantor. The UMWA filed a counterclaim seeking to enforce the penalty. Finding that Arbitrator Cantor exceeded the scope of his authority in imposing the penalty, the district court vacated that portion of the award. The district court enforced the other portions of the arbitration award. District 28 appeals from that portion of the order vacating the penalty part of Arbitrator Cantor's decision.[5]

## II

■ The question of whether a labor arbitrator exceeded the scope of his authority is a question of law. *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 228 (4th Cir.1991) Therefore, in the instant case, we review the district court's ruling *de novo. Id.* We are required to "stand in the shoes of the district court" in determining whether Arbitrator Cantor exceeded the scope of his authority. *Id.*

■ An arbitrator's award is entitled to special judicial deference on judicial review. Accordingly, a federal court's review of an arbitrator's award under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, is very limited. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,

581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *Cannelton Indus., Inc. v. District 17, United Mine Workers of Am.*, 951 F.2d 591, 593 (4th Cir.1991). The parties to a collective bargaining agreement bargained for the arbitrator's interpretation, and "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation ... is different from his." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). The arbitrator's decision, however, "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987); *Upshur Coals*, 933 F.2d at 229. Consequently, "[a]n award may be overturned only if the arbitrator must have based his award on his own personal notions of right and wrong, for only then does the award fail to 'draw its essence from the collective bargaining agreement.'" *Upshur Coals*, 933 F.2d at 229 (quoting *E.I. DuPont de Nemours & Co. v. Grasselli Employees Indep. Assoc.*, 790 F.2d 611, 614 (7th Cir. 1986) (citations omitted)).

## III

■ Absent an express provision in the collective bargaining agreement, the law of this circuit does not permit an arbitrator to impose a punitive award or punitive damages. *Cannelton Indus.*, 951 F.2d at 594; *Norfolk & W. Ry. Co. v. Brotherhood of Ry., Airline and Steamship Clerks*, 657 F.2d 596, 602 (4th Cir.1981); *Westinghouse Elec. Corp., Aerospace Div. v. International Bhd. of Elec. Workers*, 561 F.2d 521, 523–24 (4th Cir.1977), *cert. denied*, 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978). We first addressed the issue of punitive awards in *Westinghouse*. There, the arbitrator found that the employer had breached the agreement by failing to provide sufficient time for the parties to negotiate a vacation shutdown arrangement. Although no employees suf-

---

5. United Mine Workers of America, Local 2232 (Local 2232) and International Union, United Mine Workers of America, are not parties to this appeal.

fered an economic loss as a result of that breach, the arbitrator ordered the employer to pay three additional days of vacation. The contract did not contain language permitting punitive damages. On appeal, we vacated that portion of the award, reasoning that "[t]hough nominally compensatory, the award was actually punitive. Because no provision of the contract warranted this punishment, the arbitrator exceeded his jurisdiction." *Id.* at 523.

Likewise, we refused to uphold a punitive award not provided for in the collective bargaining agreement in *Baltimore Regional Joint Bd. v. Webster Clothes*, 596 F.2d 95 (4th Cir.1979). In that case, the arbitrator found that the employer had breached a subcontracting restriction and ordered the employer to pay $80,000 to the grievants even though they had been working full-time and suffered no actual loss as a result of the breach. Vacating the $80,000 payment portion of the award, we reasoned that

> [t]he award of damages in the present case does not draw its essence from the bargaining agreement, for the agreement's essence does not contemplate punitive, but only compensatory awards.... In the absence of any provision for punitive awards, and of any substantiating proof of willful or wanton conduct, an arbitrator may not make an award of punitive damages for breach of a collective bargaining agreement.

*Baltimore Regional Joint Bd.*, 596 F.2d at 98.[6]

In *Cannelton Industries*, 951 F.2d at 591, the collective bargaining agreement did not provide for punitive damages. The arbitrator in *Cannelton* found that the employer had violated the terms of a prior arbitration

award that required it to notify the union before it hired an outside contractor. The arbitrator proceeded to hold that, given this violation, he was not required to address the merits of the dispute over whether the subcontracting actually breached the substantive terms of the collective bargaining agreement. Finally, the arbitrator issued a monetary award which the union characterized as compensatory, and the employer characterized as punitive. This court, however, remanded the case for a determination by the arbitrator as to whether the subcontracting violated the agreement "in any way justifying a compensatory award." *Id.* at 595. We reasoned as follows:

> It is not clear from Basial's opinion whether he awarded money damages because Cannelton violated the notice requirements and the Volz award or because Cannelton violated the NBCWA by contracting out work that union employees should have performed. If Basial ruled for the former reason, as Cannelton argues, the award is purely punitive and it does not draw its essence from the NBCWA.

*Id.* at 594.

 In the wake of this authority, there is little doubt that the $1000 award in this case is punitive. Arbitrator Cantor awarded the individual grievant compensation for invasion of his work time. Entitlement to compensatory damages for contract breach rests on a party's suffering "some legally cognizable loss, be it manifestly monetary or measurable in monetary terms." *Baltimore Regional Joint Bd.*, 596 F.2d at 98. There is nothing in the record establishing this award as compensatory. Moreover, we regard as

---

6. It is unclear whether punitive damages may be imposed in the absence of a provision in the collective bargaining agreement allowing punitive damages where willful and wanton conduct is present: "With respect to vacation shutdowns, compensatory damages may be awarded only when a breach of the bargaining agreement causes a monetary loss. In the absence of willful or wanton conduct, punitive damages should not be awarded." *Westinghouse*, 561 F.2d at 523. We need not decide whether an arbitrator can issue a punitive award in the face of wanton conduct only because there is absolutely no evidence in the record that Island Creek acted willfully or wantonly in this case. (J.A. 107).

Along a similar vein, language in *Baltimore Regional Joint Board* referring to willful and wanton conduct may have created some confusion inasmuch as it appears to imply that, in order to award punitive damages, there must be (1) an express provision in the bargaining agreement *and* (2) willful and wanton conduct. Our subsequent precedent, however, has never endorsed the view that both a provision expressly allowing punitive damages *and* evidence of willful and wanton conduct is necessary. *Cannelton Indus.*, 951 F.2d at 594; *Norfolk & W. Ry. Co.*, 657 F.2d at 602.

further evidence of the punitive nature of the award the fact that the $1000 payment was to be made to Local 2232 rather than to any individual grievant. As a result, the award issued by Arbitrator Cantor is punitive. Because the NBCWA contained no express provision allowing the award of punitive damages, the punitive damage award issued by Arbitrator Cantor did not draw its essence from the collective bargaining agreement, and therefore, cannot be sustained. *Cannelton Indus.*, 951 F.2d at 594.[7] Nevertheless, District 28 makes several arguments in support of Arbitrator Cantor's award. First, District 28 argues that, once issued, the arbitrator has the authority to enforce a cease and desist order. This argument, however, circumvents the issue in this case. The question here is not whether an arbitrator can enforce a cease and desist order, but whether he can order punitive damages in the absence of an express provision in the collective bargaining agreement permitting the award of punitive damages. Case law in this circuit has repeatedly held that an arbitrator may not award punitive damages if the collective bargaining agreement does not expressly

provide for such an award, and we are not at liberty to disturb it.[8]

Second, District 28 argues that Arbitrator Cantor's award should be enforced even though the NCBWA does not provide for punitive awards. In support of its contention, District 28 points to decisions from other circuits allowing punitive damages even though the collective bargaining agreement did not provide for such awards. *See Lee v. Chica*, 983 F.2d 883 (8th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056 (9th Cir. 1991); *Raytheon v. Automated Business Sys., Inc.*, 882 F.2d 6 (1st Cir.1989); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir.1988); *Local 369, Bakery & Confectionery Workers Int'l Union of Am., AFL–CIO v. Cotton Baking Co., Inc.*, 514 F.2d 1235 (5th Cir.1975), *cert. denied*, 423 U.S. 1055, 96 S.Ct. 786, 46 L.Ed.2d 644 (1976); *Local 416, Sheetmetal Workers Int'l Ass'n v. Helgesteel Corp.*, 335 F.Supp. 812 (W.D.Wis. 1971), *rev'd on other grounds*, 507 F.2d 1053 (7th Cir.1974).[9] Regardless of the law in other circuits, however, we have consistently

7. District 28 also attempts to distinguish between punitive awards and awards intended as a penalty. It argues that the award in the instant case is a "penalty" rather than "punishment." *See International Union of Operating Engineers, Local No. 450 v. Mid-Valley, Inc.*, 347 F.Supp. 1104 (S.D.Tex.1972); *Sidney Wanzer & Sons, Inc. v. Milk Drivers Union*, 249 F.Supp. 664 (N.D.Ill. 1966). We cannot agree with, and no cases in this circuit support, District 28's distinction. A penalty and punitive damages achieve the same result. Punitive damages are imposed not to compensate a plaintiff, but to be " 'exemplary, punitive, or vindictive damages [imposed] upon a defendant.' " *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 16, 111 S.Ct. 1032, 1042, 113 L.Ed.2d 1 (1991) (quoting *Day v. Woodworth*, 54 U.S. (13 How.) 363, 14 L.Ed. 181 (1852)). In the instant case, Arbitrator Cantor awarded the individual grievant compensation for the invasion of his work time, and no other actual damages were shown. Therefore, although Arbitrator Cantor considered the award nonpunitive, it is in fact punitive. *See Westinghouse*, 561 F.2d at 523–24; *Georgia Power Co. v. International Bhd. of Elec. Workers, Local 84*, 995 F.2d 1030, 1032 (11th Cir.1993) ("An arbitrator's denomination of an award as compensatory will not prevent the court from determining the award is in fact punitive."), *cert. denied*, — U.S. —, 114 S.Ct. 1644, 128 L.Ed.2d 364 (1994).

8. District 28 contends that our recent decision in *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141 (4th Cir.1993) alters our well-established precedent disallowing any punitive award unless expressly provided for in the collective bargaining agreement. We disagree. In *Peoples Sec. Life*, we upheld an arbitration award that included treble damages. Unlike in the instant case, however, the underlying arbitration agreement in that case *authorized* the arbitration panel to consider claims under North Carolina's Unfair Trade Practices Act, which specifically permits an award of treble damages.

9. District 28 argues that these circuits allow an award of punitive damages unless the collective bargaining agreement specifically prohibits such an award. Although District 28 argues that the Sixth Circuit also allows punitive damages in arbitration awards, it admits that the status of such punitive awards remains unclear in that circuit. *See Local 120 v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1286–90 (6th Cir.1990). Island Creek agrees that the Fifth and Eleventh Circuits allow a punitive award unless specifically prohibited by the agreement; however, Island Creek contends that the First, Sixth, Seventh, Eighth, and Ninth Circuits look to the collective bargaining agreement to determine if punitive damages have been authorized.

held that punitive damage awards are not allowable unless *expressly* provided for in the collective bargaining agreement. *See, e.g., Cannelton,* 951 F.2d at 594. Otherwise, the award "does not draw its essence from the bargaining agreement." *Id.* at 596 (Hamilton, J., dissenting).

## IV

In summary, we hold that an arbitrator cannot award punitive damages where the collective bargaining agreement does not specifically so provide. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED.*